MOTYKA *v.* DETROIT, GRAND HAVEN & MILWAUKEE
RAILWAY CO.

MIECZNIK *v.* SAME.

KULESZA *v.* SAME.

ON REHEARING.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—PROTECTED CROSSING.
   Rule that one about to cross railroad track must take all reasonable precaution and be assured that it is safe to cross, and that failure to do so is contributory negligence as matter of law, precluding recovery, is applicable to so-called open crossings, but not to those protected by flagman, since some reliance may be placed on protection afforded at crossing.

2. SAME—QUESTION FOR JURY.
   Whether pedestrians killed at protected railroad crossing were guilty of contributory negligence was question for jury, where evidence shows that, when they approached crossing, flagman was in view and train was passing, but, when they attempted to cross, after train had passed, flagman had disappeared, and they were struck by locomotive backing down on them, which they could have seen had they taken precaution to look.
   NORTH, WIEST, and BUTZEL, JJ., dissenting.

Error to Wayne; Brennan (Vincent M.), J. Submitted January 6, 1931. (Docket Nos. 3, 4, 5, Calendar Nos. 35,082, 35,083, 35,084.) Decided April 7, 1931. Resubmitted June 12, 1931. Decided January 4, 1932.

Separate actions of case by Thomas Motyka, administrator of the estate of John Motyka, deceased, Mary Miecznik, administratrix of the estate of Casimir Krzewinski, deceased, and Maryanna

---

On right of traveler to rely on automatic signals at crossings, see annotation in L. R. A. 1916D, 788.

As to care required of driver of automobile at railroad crossing, see annotation in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

Kulesza, administratrix of the estate of Stanislaw Kulesza, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company, a Michigan corporation, and another for personal injuries received in the same accident at a railroad crossing and resulting in the death of plaintiffs' decedents, were tried jointly. Judgments for defendants *non obstante veredicto*. Plaintiffs bring error. Reversed, and judgments ordered entered on verdicts. Former opinion affirmed on rehearing (253 Mich. 647).

*Arthur A. Koscinski* and *Robert J. Wojcinski,* for plaintiffs.

*Frederic T. Harward* and *Frederick V. Slocum,* for defendants.

### On Rehearing.

CLARK, C. J. Since this court in *Davis* v. *Railway Co.,* 241 Mich. 166, adopted the standard of conduct laid down in *Baltimore & Ohio R. Co.* v. *Goodman,* 275 U. S. 66 (48 Sup. Ct. 24, 56 A. L. R. 645), it has been held, quite consistently, that one about to cross a railroad track must take all reasonable precaution and be assured that it is safe to cross, and that failure so to do is contributory negligence, precluding recovery. This holding generally has been applied to so-called open crossings. But this case ought not to be treated as an open crossing case. Nor can it be said to be a case where the flagman was not on duty when plaintiffs attempted to cross, nor one where no act or conduct of the flagman could be construed as an invitation to cross or an assurance of safety. When plaintiffs' decedents came to the crossing the watchman was on the crossing. It was then a protected crossing. It is settled law, and it is common sense, that one may place some reliance on the protection afforded at the crossing. That being true, is it not wrong to hold that one about to cross

a protected crossing must on his own account take all the precautions and have all the assurances of safety required as to open or unprotected crossings? Does not such a holding ignore completely the settled law that one may rely to some extent at least on the protection afforded at the crossing? If one may place no reliance on gates and flagman, why have them?

In these cases, taking the facts, as we must, in the light favorable to plaintiffs, it appears that the boys came to the crossing protected by a flagman. They stopped and looked. The flagman's shanty was there. The crossing was obstructed by a moving train. The flagman was on the crossing. The train passed. The crossing cleared. The flagman left the crossing. The boys started across and were killed by a train which they might have seen, and, had this been an open crossing, it would be held that they should have seen it. The flagman should have protected this crossing as against such train, and, according to some of the evidence, he did not. The boys ought not to be held guilty of contributory negligence as a matter of law in not looking more carefully before crossing the track in view of the conduct of the watchman. It was for the jury to say whether, in view of the facts, their failure to look more carefully was contributory negligence.

Adhering to former opinion, the judgments are reversed, and causes remanded for judgments on the verdicts, with costs.

McDonald, Potter, Sharpe, and Fead, JJ., concurred with Clark, C. J.

Wiest, J. (*dissenting*). The facts are not in dispute. No presumption of care can be indulged, for plaintiffs called the sole eyewitness and his testi-

mony must be accepted as true. Defendant's negligence must be conceded.

The statute required a flagman at the crossing when ordered by public authority (1 Comp. Laws 1929, § 1950, 2 Comp. Laws 1929, §§ 11051, 11170). One was ordered and was absent from his place of duty at the time of the accident. The statute, under penalty, also requires warning signals for the protection of crossings and all such safety measures are on a parity, but no one ever heard of recovery had by one who failed to look before crossing because he heard no signal. Plaintiffs do not claim any signal was given the young men to cross the tracks. The negligence alleged was failure to warn the young men of danger. The point of law involved is the same as if the railroad company had failed to give warning by bell or whistle at a crossing.

As said in *Duncan* v. *Railway Co.*, 46 Mo. App. 198, 207:

"And so here this watchman's duty was to give notice of approaching trains. It is of the same nature—performing the same office—as ringing the bell or sounding the whistle. The same rule will apply whether the signal should come from a ringing bell, a sounding whistle or the words of caution from the flagman or the watchman."

The young men were not invited to cross the tracks, for no flagman was in sight. Seeing no flagman, the young men walked upon the track without looking in the direction cars were approaching, and were struck and killed. Had they looked, while in a safety zone, as they might, they would have seen the cars and not have stepped upon the track.

It is not the law that a traveler is bound to exercise only such care as would protect him from injury if the railroad company be not at fault. It is not a harsh rule that a man should turn his head to look

for a train that may be in plain sight and injure or kill him if he steps upon the track. This degree of care rests upon him and want of care by others does not relieve him.

As stated in 2 Wood on Railroads (Minor's Ed.), p. 1518:

"No man has a right to depend entirely upon the care and prudence of others; he is bound himself to exercise due care to prevent injury to himself from the lack of proper caution in others."

Did the absence of the flagman relieve the young men of the duty to look where they were going? Upon this we quote the following from 2 White, Personal Injuries on Railroads, § 1001:

"But of course the absence of a flagman, like any other act of negligence on the part of a railroad company, will not relieve the traveler of the duty to look out for himself, as no one has a right to rely wholly upon the care and prudence of others for his own protection from danger. And if the train could have been seen approaching or if the traveler could have heard it and failed to look or listen, then the mere fact that the flagman was absent or failed to signal him, will not excuse his otherwise negligent conduct."

And again from Wood, p. 1522:

"While he has a right to expect that the company will discharge its duties, it does not release him from his obligation to exercise ordinary care to protect himself against a possible breach of its duty on the part of the company."

It cannot be said, as matter of law, that one signaled by a flagman to cross the track is thereafter required to stop, look, or listen for trains (*Lake Erie & Western R. Co.* v. *Sanders,* 72 Ind. App. 283 [125 N. E. 793]), but it can be said, as matter of law, that, where a crossing is supplied with a flagman and

the flagman is absent and does not invite a crossing, one is guilty of contributory negligence in crossing without looking and listening. *Cadwallader* v. *Railway Co.,* 128 Ind. 518 (27 N. E. 161).

"But absence, or negligence of a flagman, will not excuse a traveler about to cross the track from looking both ways and listening." (Syllabus) *Berry* v. *Railroad Co.,* 48 N. J. Law, 141 (4 Atl. 303).

Again quoting:

" 'To prove that a party is excused, where he has been careless, because the other party has failed to give the accustomed signals, or for any other act of negligence on his part, strikes at the principle upon which such actions are based. Such a rule is not sustained by any of the adjudged cases.' " *Wilcox* v. *Railroad Co.,* 39 N. Y. 358 (100 Am. Dec. 440), quoted with approval in *Ormsbee* v. *Railroad Corp.,* 14 R. I. 102, 107 (51 Am. Rep. 354):

"Failure on the part of those in charge of the locomotive to ring a bell or sound a whistle as a warning for the street crossing did not relieve the deceased, operating his car, from taking ordinary precautions for his safety. He was bound to use his senses in listening and looking, and using reasonable care to observe the warning signs along the way, pointing out that he was about to cross railroad tracks." *Wilson* v. *Railroad Co.* (C. C. A.), 38 Fed. (2d) 59.

While a traveler has a right to expect the performance of the statutory duties by the railroad with reference to warning, this expectation does not excuse him from exercising reasonable care to ascertain, by sight as well as hearing, whether there is a train coming immediately upon him as he attempts to cross the track.

"The same remark is true as to the absence of a flagman. If it is customary to have one at a crossing, and he is absent, a traveler has a right to rely

to some extent on this fact; but this does not excuse his not looking at all to see if a train is coming, when there are no obstacles to prevent his seeing if he looks." *Tyler* v. *Railroad Co.*, 157 Mass. 336 (32 N. E. 227).

In *Railroad Co.* v. *Houston*, 95 U. S. 697, quoted with approval in *Schofield* v. *Railway Co.*, 114 U. S. 615 (5 Sup. Ct. 1125), the rule was stated as follows:

" 'The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others.' "

There is no distinction between warnings by a flagman and other warnings provided by statute. All are intended to protect crossings.

I think the opinion of my Brother falls within the error pointed out in *Toledo, Wabash & Western R. Co.* v. *Shuckman*, 50 Ind. 42, where it was held error to instruct the jury that it was the duty of the deceased:

"To make such use of his eyes and ears, and all his faculties, as would enable him to avoid danger, provided the managers of the railroad train were doing their duty; if he did that he was free from blame."

The court held, quoting syllabus:

"It is the duty of a person about to cross a railroad track to use his faculties to his utmost ability, in proportion to the danger impending, whether the managers of the railroad train are doing their duty or otherwise."

The court also made the following quotation:

"In the case of *Ernst* v. *Railroad Co.,* 39 N. Y. 61 (100 Am. Dec. 405), the court says: 'Negligence in the railroad company in the giving of signals or in omitting precautions of any kind, will not excuse his' (in this case the decedent's) 'omission to be diligent in such use of his own means of avoiding danger. And where, by such use of his senses, the traveller might avoid danger, notwithstanding the neglect to give signals or warning, his omission is concurring negligence, and should be so peremptorily declared by the court.'"

In *Sala* v. *Railway Co.,* 85 Iowa, 678 (52 N. W. 664), it was stated:

"A railway crossing is apt to be a place of danger, and the persons using it should not omit the precaution of looking for an approaching train before going onto the track, when they may do so without inconvenience, even though a watchman should be present to give notice if a train is approaching. The absence of the watchman should not be regarded as an invitation to cross without looking for danger. Such a case is distinguishable from one where the watchman is present, and by a signal to cross, or by a failure to give any signal when he sees a crossing attempted, gives assurance, either express or implied, that it can be made without danger."

See, also, *Shaw* v. *Jewett, Rec'r,* 86 N. Y. 616; *Cincinnati, Hamilton & Indianapolis R. Co.* v. *Butler,* 103 Ind. 31 (2 N. E. 138).

In *Beagle* v. *Railroad Co.,* 184 Mich. 17, this court stated:

"It is said that the plaintiff had the right to rely upon the custom of the defendant to ring the bell. The exact effect of the defendant's negligence upon the duty of the plaintiff in the premises is well pointed out in *Ellis* v. *Railroad Co.,* 169 Mass. 600 (48 N. E. 839), where it is said:

" 'While the raising of the gates justified the plaintiff in attempting to cross when he did, and while that fact, and the facts that no whistle was sounded and no bell was rung, are to be taken into consideration on the question of how much he must himself look and observe as he makes his way across, these circumstances do not excuse him from looking and listening and taking thought for his own safety. He cannot rely wholly upon them, and cannot recover without showing more, as to his own conduct, than that he so relied. * * * We are of opinion that, as matter of law, there was no evidence from which it could be found that the plaintiff himself exercised due care, and the verdict for defendant was rightly ordered.' "

My Brother would reject from this case the rule stated in *Baltimore & Ohio R. Co.* v. *Goodman,* 275 U. S. 66 (48 Sup. Ct. 24, 56 A. L. R. 645), and adopted by this court in *Davis* v. *Railway Co.,* 241 Mich. 166; *DeJager* v. *Andringa,* 241 Mich. 474 (an opinion written by Justice CLARK); *Rosencranz* v. *Railroad Co.,* 244 Mich. 137; *Laurain* v. *Railroad Co.,* 249 Mich. 630, but neglects to state a standard of care as a substitute, and, apparently, would leave it to the humanitarian instincts of a jury.

The New York court of appeals, in *Schrader* v. *Railroad Co.,* 254 N. Y. 148 (172 N. E. 272), stated that the rule of the *Goodman Case* had never been adopted by that court, and gave the New York rule as follows:

"One who approaches any crossing, at any time, or under any circumstances, without taking any precautions for his safety, is guilty of contributory negligence as matter of law."

The rule in the *Goodman Case* is not a new one, and, as we have pointed out, has for ages been applied to so-called protected crossings.

In *Serfas* v. *Railroad Co.,* 270 Pa. 306 (113 Atl. 370, 14 A. L. R. 791), the rule to stop, look, and listen was held to apply when crossing gates are up.

There was no invitation to the young men, express or implied, to cross under the guidance of the flagman. Safety of pedestrians, as well as of persons traveling on trains, commands adherence to the rule of look and listen at railroad crossings.

We think plaintiffs' decedents were guilty of contributory negligence as matter of law, and it was the peremptory duty of the trial judge to so hold.

Under the authorities cited in this and our previous opinion, the judgment should be affirmed, with costs.

BUTZEL, J., concurred with WIEST, J.

NORTH, J. (*dissenting*). I concur with Justice WIEST because there is no testimony in this record tending to show that any invitation or misleading signal was given by the crossing tender which induced plaintiffs' decedents to attempt to cross. In such a case one who, at a highway crossing in broad daylight and in the absence of any distracting circumstance, walks in front of an approaching locomotive which would have been observed by exercise of the slightest degree of care, is guilty of contributory negligence, barring recovery for injuries sustained.