RICHMAN *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. APPEAL AND ERROR—DIRECTED VERDICT.
    In reviewing judgment on verdict directed for defendant, evidence most favorable to plaintiff must be accepted.

2. RAILROADS—NEGLIGENCE—FAILURE TO HAVE LIGHTS AND SOUND WARNING.
    Failure to have lights on locomotive and to sound whistle on approaching crossing constitute negligence.

---

Care required of driver of automobile at railroad crossing, see annotation in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

3. SAME—CONTRIBUTORY NEGLIGENCE—DUTY OF ONE CROSSING TRACKS.

> Law imposes care upon person approaching railroad crossing, and it is his duty to carefully observe and ascertain whether he can safely proceed to cross tracks.

4. SAME—EVIDENCE—PHYSICAL FACTS.

> Mere statement of automobile driver that he looked before proceeding to cross tracks does not overcome physical facts of case.

5. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

> Automobile driver struck by locomotive at crossing was guilty of contributory negligence as matter of law, where it appears from physical facts that had he looked properly he would have seen the oncoming train and could have prevented accident, notwithstanding his testimony that he looked before proceeding and saw no train approaching.

Error to Wayne; Murphy (Alfred J.), J. Submitted April 8, 1931. (Docket No. 25, Calendar No. 35,464.) Decided June 1, 1931.

Case by Joseph Richman against Detroit, Grand Haven & Milwaukee Railway Company, a corporation, for personal injuries received in a railway crossing accident. Directed verdict and judgment for defendant. Plaintiff brings error. Affirmed.

*Sol Blumrosen,* for plaintiff.

*Frederic T. Harward (William W. MacPherson,* of counsel), for defendant.

BUTZEL, C. J. For upwards of four years, plaintiff resided on the Adams road near its intersection with Woodward avenue, in the village of Birmingham, Michigan. To enter the Adams road from Woodward avenue, one must cross five tracks of two rails each. The two most westerly tracks adjoin Woodward avenue and are exclusively for street

railway purposes. The three more easterly ones belong to defendant, or other affiliated railroad companies. The easterly and westerly railroad tracks are used to set out cars and also to enable trains to pass one another. The railroad track between these latter two is used as a main line for through traffic.

Plaintiff was familiar with the tracks, for he crossed them daily. The railroad was not required by any legal authority to keep a watchman at the crossing and it was unguarded. The Adams road crosses the tracks at an angle of 45 degrees. The distance between the railroad tracks is 9½ feet, and between the rails of each track approximately five feet. Plaintiff was possessed of good sight and had no physical impediments.

Inasmuch as the verdict was directed in favor of defendant, the evidence most favorable to plaintiff must be accepted. At about 9:30 p. m. on June 16, 1926, he drove a Ford car along Woodward avenue, and turned in a northeasterly direction on to Adams road. As he approached the street car tracks, he stopped his car, and, seeing that no street cars were approaching, crossed the street car tracks and again stopped at the first or more westerly railroad tracks. He saw a long freight train standing on this track. The rear of the caboose on the south end of the train was approximately five feet north of Adams road. The plaintiff stopped his car, and as he looked and listened, a man came out of the rear door of the caboose, descended to the ground from the west side of the train, motioned, and called out to plaintiff, "Come on." The testimony does not show that the man had any lantern, wore a cap, uniform, or other insignia of a railroad employee. He was in no way identified as an agent or employee of defendant. Plaintiff claims that he looked in both directions before proceeding across the track. There was also

an engine standing on the fifth or most easterly of the three railroad tracks. Plaintiff's lights were shining in a northeasterly direction, from which a train was coming. After receiving the word from the man who emerged from the caboose, plaintiff speeded up his car and as he drove on to the fourth or middle railroad track the front part of his car was struck by the locomotive of a south-bound train belonging to defendant. Plaintiff sustained injuries for which he brought suit. He claims that the moving train had no lights and sounded no whistle. This would constitute negligence on the part of defendant.

At the conclusion of testimony on behalf of plaintiff, defendant, after producing only one witness to show the lay of the tracks, asked for a directed verdict in its favor. The trial judge held plaintiff guilty of contributory negligence, and directed a verdict against him.

The invitation by the man who came from the caboose, and who was a stranger as far as the record shows, did not completely relax plaintiff's duty to exercise due care and caution in crossing the other railroad tracks. An ordinarily prudent man would have looked carefully before proceeding. The man who came out of the caboose had his back turned to the more easterly tracks, and his statement indicated that the train with the caboose had come to a standstill.

Notwithstanding the fact that plaintiff claims that the locomotive of the south-bound train on the middle railroad track bore no headlight, and that he looked both north and south before he crossed the track, the very fact that the locomotive bore down upon him almost immediately upon his reaching the track, and struck the front part of his automobile, shows that he would have seen the oncoming train

had he looked properly. Without taking into consideration the fact that the track was near Woodward avenue, which is illuminated, for this is not disclosed by the record, as the judge stated, nevertheless the headlights of the car were turned partly in the direction from which the train was coming. Plaintiff testified that it was light enough for him to see the man coming out of the caboose on the freight train, although he was five feet away from the Adams road. If he had looked he would necessarily have seen the approaching train.

The law imposes care upon the person approaching a railroad crossing. It was plaintiff's duty to carefully observe and ascertain whether he could safely proceed in a northeasterly direction across the second railroad track. His mere statement that he looked does not overcome the physical facts of the case. As was said in *Baker* v. *Delano*, 191 Mich. 204:

"This testimony also makes the conclusion irresistible that if the deceased had stopped, looked, and listened, it would have been a physical impossibility for him not to have been aware of the approach of the engine, no matter whether the bell was being rung or the lights were burning. There was no obstruction to his view for 500 feet along the tracks in the direction from which the engine was coming. A stop for a moment, or a momentary glance, would have apprised him of the danger. We see no escape from the conclusion that the circuit judge was clearly right in holding that the deceased was guilty of contributory negligence."

In *Ackerman* v. *Railroad Co.*, 249 Mich. 693, this court said:

"Plaintiffs recognize the general rule that one about to cross a railroad track must look for ap-

proaching trains while he is in a place of safety and has an unobstructed view. But their position is that they used due care in that they looked and listened, saw sufficient clear track to induce a prudent man to believe he could cross in safety, could have crossed had not the train approached at an excessive rate of speed, the rough road took their attention, and these circumstances made the question of negligence one for the jury.

"The general duty to look is not a mere element of due care, to be weighed with other circumstances in determining negligence. In the words of Mr. Justice Wiest in *Rosencranz* v. *Railroad Co.*, 244 Mich. 137, it is a 'standard of conduct, based on a rule of reasonable care, to which all drivers of motor vehicles must conform or bear the consequences.' \* \* \*

"In this case plaintiffs had an unobstructed view, and there was nothing to throw them off guard. They had ample opportunity to see the approaching train and to stop in a place of safety, not only before they reached the tracks, but even after they had crossed the west-bound track. *Downey* v. *Railway Co.*, 230 Mich. 243; *Brady* v. *Railway Co.*, 248 Mich. 406. Exceptional circumstances necessary to modify the standard of conduct were not present. The language in *McGee* v. *Railway Co.*, 102 Mich. 107 (26 L. R. A. 300, 47 Am. St. Rep. 507), is particularly applicable:

" 'It will not do to say that he has discharged his responsibility in case of an accident by looking when some feet away, for he may miscalculate the distance and the speed of the car. To avoid danger, he must look just before he enters upon the track.'

"Plaintiffs are chargeable with contributory negligence of their driver, and the judgment is affirmed."

See, also, *Rosencranz* v. *Railroad Co.*, 244 Mich. 137; *DeJager* v. *Andringa*, 241 Mich. 474; *Brady* v. *Railway Co.*, 248 Mich. 406; *Baltimore & Ohio R.*

Co. v. Goodman, 275 U. S. 66 (48 Sup. Ct. 24, 56 A. L. R. 645):

The court was correct in directing a verdict in favor of defendant. The judgment is affirmed, with costs.

Wiest, Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.