DUNCAN H. READ, as Administrator, etc., of R. BARTON READ, Deceased, Plaintiff, *v.* NEW YORK CITY AIRPORT, INC., and Another, Defendants.

Municipal Court of New York, Borough of Queens, Sixth District, August 29, 1932.

*Arthur J. Hayslip* [*Albert E. Short* of counsel], for the plaintiff.

PETTE, J. This is an action to recover for damage to an aeroplane owned by plaintiff's intestate as a result of a collision, upon the premises of defendant New York City Airport, Inc., between the aeroplane and a truck owned by defendant Labosco. The

truck, which was engaged in performing certain work upon the airport, was standing, unattended, upon the field, at the time of the accident, which occurred in daylight at about twelve-fifteen P. M. The aeroplane, driven by one Bayley, a licensed pilot, while taxiing down the runway, collided against the truck, sustaining damage to its propeller and left lower wing.

The evidence shows that there were several aeroplanes parked in front of their respective hangars, comparatively evenly lined up with the aeroplane in question, and that the pilot intended to taxi around them so as to reach the gas tank about 145 yards south of the hangar. After placing the aeroplane on the apron, the pilot stepped into its cockpit, warmed up the motor, and "pulled directly ahead into the taxi runway, turned down the taxi runway, looking from both sides of the cockpit to make sure (that he) would not hit anything." On cross-examination, the pilot admitted that he gave a "casual" glance down the field just before getting into the cockpit; that he looked in the direction in which he was going, but that his view was obstructed by other aeroplanes. The pilot also admitted that after he drove the aeroplane from the apron to the field, beyond the line of the other planes, so that they were not in the line of vision, he could have seen to the right, down the field, if he had looked, and that the accident took place on the right of the field. An important piece of testimony by the pilot is this: "Q. Listen to the question carefully: If you had gone out and walked past the tails of those planes parked in front of the hangar on the taxi runway which was clear then and looked south, could you have seen that truck? A. Yes, I could have. Q. But you did not do it, did you? A. No."

The pilot further testified that, as he got into the open with the plane, he looked down the field, but did not see anything in the way. He then taxied slowly forward, zigzagging as much as possible there, and moving his head from one side to the other to avoid any collision. As he was lining his plane for the gasoline tank, plaintiff testified that something struck his right wing. He did not see the truck until after the accident.

Continuing, the pilot admitted that if he had looked to the right, even after he got into the cockpit, he could have seen the truck, but that he did not look clear to the other end of the field.

Under the circumstances, it is plain that the pilot did not exercise due diligence or take proper precaution to see that the course he was going to pursue was free from obstructions. The "casual" look which the pilot took was not enough. It was his duty to look carefully before and while proceeding. He admits that he could have seen the truck if he had looked.

A search of the reported authorities fails to reveal any case in this State involving a collision between aeroplanes, or an aeroplane and a land vehicle. There is no statute in this State controlling the operation and management of aeroplanes. It seems, however, that the rules of law applicable to torts generally govern in this type of case. The recent case of *Seaman* v. *Curtiss Flying Service, Inc.* (231 App. Div. 867), decided by the Appellate Division, Second Department, in which an aeroplane accident was involved, is an illustration of the application of such common-law rules.

There are two other reported cases which throw light upon the question. In *Greunke* v. *North American Airways Co.* (201 Wis. 565, 569; 230 N. W. 618, 619), decided by the Supreme Court of Wisconsin in April, 1930, reported with interesting annotation in 69 American Law Reports, 295, there was present an almost parallel situation, in point of law, to the one at bar. A plane making a landing bounded as it struck the runway, and collided against the rear of another plane, which was stopped there. The court called attention to the fact that thirteen States, including Wisconsin, had enacted a uniform law with respect to aeroplanes, as follows: " ' The liability of the owner of one aircraft, to the owner of another aircraft, or to aeronauts * * * on either aircraft, for damage caused by collision on land or in the air shall be determined by the rules of law applicable to torts on land.' "

This provision is now to be found in section 6 of the Uniform Aeronautics Act. The Wisconsin court then says: " The statute is merely declaratory of common-law principles. The rule of the common law is that every person shall use ordinary care not to injure another. Ordinary care is held to be such care as the great mass of mankind would use under the same or similar circumstances, or such care as the ordinarily prudent person would use under the same or similar circumstances."

To the same effect is the case of *Wilson* v. *Colonial Air Transport* (—— Mass. ——; 180 N. E. 212, 214), in which the court holds: " The rules of law relating to the operation of air craft, in the absence of statute, in general are rules relating to negligence and nuisance, and are not distinguishable from those which relate to the operation of vehicles, perhaps, more closely to motor vehicles on land. In this Commonwealth at present there is no statute specifically applicable to this issue of negligence in the operation of aircraft, and the ordinary rules of negligence and due care obtain."

Applying, then, the ordinary rules of law to the facts at bar, the court finds, upon the whole case, that the pilot did not operate the aeroplane in a careful and prudent manner. The fact that he had the right of way to proceed down the runway did not, however,

excuse him from the duty of alertness and doing what he reasonably could to avoid a crisis.

The question of fact as to whether the pilot ought not to have been aware of the presence of the truck, and avoid it, is decided against plaintiff. The pilot was required to be watchful and see that the runway was clear, and to use reasonable care and diligence to avoid a collision. Had he looked carefully, he would have seen the truck in time. He admits it.

Taking the other aspect of the situation: The defendant corporation had a duty to keep the runway free from obstructions, so far as possible or to place markers where required to warn pilots of danger. The truck had a right to be on the field, because it was engaged in doing work there. Whether it had a right to be where it was, unattended, at the time of the accident, is another matter. However, to say that it should have been circumscribed by markers would be requiring something quite unnecessary, since the truck, because of its size, in full daylight, was plainly visible for a considerable distance.

But even if a case of negligence on the part of defendants, or either of them, could be made out, upon the evidence, I am satisfied that the pilot failed to exercise reasonable care and vigilance, under the circumstances, and that this precludes recovery by plaintiff, upon the ground of contributory negligence. The pilot had a duty to look to ascertain that his proposed course was not dangerous. (*Pratt* v. *Burns*, 189 App. Div. 33; *Hood* v. *Stowe*, 191 id. 614; *Schultz* v. *Nicholson*, 116 Misc. 114.)

It follows that defendants are entitled to judgment on the merits.