SCURLOCK *v.* PEGLOW.

1. MOTOR VEHICLES—INTERSECTION—RIGHT OF WAY—STATUTES.

Where two motor vehicles reach intersection simultaneously and neither highway is through thoroughfare, vehicle on right has right of way under statute, but where one on left reaches intersection while other is 100 feet away, said statutory provision is not applicable (1 Comp. Laws 1929, § 4712).

2. SAME—NEGLIGENCE—DIRECTED VERDICT.

Automobile driver, whose car was struck at intersection by one approaching from right on intersecting highway, was not guilty of negligence as matter of law in failing to make more careful observation to right, where he made such observation on entering intersection, at which time car which struck his was more than 100 feet away and not in sight, although his son, riding with him, saw it 1,000 feet from corner when they were 300 or 400 feet therefrom.

3. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

Where plaintiff, when he entered intersection, looked to right and saw no car approaching within 100 feet, it cannot be said that he was guilty of contributory negligence as matter of law because he failed to see and avoid defendant's car, approaching from right, before it struck his car just after it had crossed center of intersection; neither highway being through thoroughfare.

4. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In action for damages resulting from automobile collision at highway intersection, evidence *held*, to present issues for jury as to defendant's negligence and plaintiff's contributory negligence.

5. DAMAGES—EXCESSIVE VERDICT.

Verdict of $11,787.83 for injuries to 47-year old man, who was strong and healthy before accident and earning $85 to $90

per month, *held,* not excessive, where he suffered fracture of one or more of lumbar vertebræ, he will probably suffer pain during remainder of his life, and his present earning capacity, if any, has been reduced to almost nominal amount.

6. SAME—DEATH—LOSS OF WIFE'S SERVICES—EXCESSIVE VERDICT.
    Verdict of $3,000 for death of wife and loss of her services, *held,* not excessive, where there were minor children.

Appeal from Berrien; White (Charles E.), J. Submitted April 12, 1933. (Docket No. 113, Calendar No. 37,177.) Decided May 16, 1933.

Case by Henry Scurlock against Donald Peglow for damages sustained as a result of an automobile collision at a highway intersection. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Stuart B. White* and *Mason, Alexander, McCaslin & Cholette,* for plaintiff.

*I. W. Riford,* for defendant.

NORTH, J.   Plaintiff, on trial by jury, had verdict and judgment against defendant for damages which plaintiff sustained incident to an automobile collision at an intersection of highways in Berrien county. At the close of plaintiff's proofs defendant moved for a directed verdict. This motion was denied. After verdict, defendant moved for judgment *non obstante veredicto* and, in case of denial, for a new trial. Both motions were denied. In his appeal defendant asserts that the trial court was in error in refusing to direct a verdict and judgment for defendant on the ground that plaintiff as a matter of law was guilty of contributory negligence; and that there was also error in denying the motion

for a new trial on the ground that the damages awarded were excessive, and because of other irregularities in the trial.

Should the trial court have held as a matter of law that plaintiff was guilty of contributory negligence, or that defendant was free from negligence? In the daytime of August 23, 1931, plaintiff driving a Maxwell touring car approached the intersection of these highways from an easterly direction. Each is paved, but neither is designated as a through highway. As plaintiff approached the intersection from the east, he observed a Ford sedan coming from the north. Plaintiff released the clutch of his machine, coasted toward the intersection, and continued to make observations to ascertain what course the Ford would take. As the Ford sedan reached the corner, it turned in a westerly direction, but, when a short distance around the corner, stopped near the northerly side of the pavement. About this time plaintiff neared the intersection, and, thinking that there was a possibility of the Ford sedan turning around in the highway ahead of him, he continued to observe it; but at the same time, as he entered the intersection, he looked both to the north and south along the highway. Because of intervening obstructions, a fence and a lilac bush, plaintiff's view to the north was limited to substantially 100 feet, and within this distance no approaching vehicle was observed. For some considerable distance to the east of the intersection, plaintiff's view to the north had been more or less obstructed by a barn, a house, outbuildings, trees, etc., on the northerly side of the east and west thoroughfare. While crossing the first half of the north and south highway, the regular approach of traffic thereon was

from the south, and plaintiff made observations in that direction, and, as noted above, continued to be watchful of the Ford sedan in the highway just ahead of him. The pavement on each highway is approximately 16 feet wide. Substantially at the point where plaintiff made the observation both north and south on the intersecting highway, he applied the power to his car by inserting the clutch. At this time he was proceeding six to eight miles per hour and somewhat to the left of the regular line of the west-bound traffic. Without again looking in a northerly direction, plaintiff proceeded until his machine had just crossed the center line of the north and south pavement, at which time he observed defendant's automobile approaching from the north and distant only 10 or 15 feet from plaintiff's car. The Graham-Paige driven by defendant skidded on the dry pavement approximately 35 feet, struck plaintiff's Maxwell touring car about midway on the right side, practically demolished it, and threw it off the traveled portion of the intersection and onto the southwest corner of the highways. The attendant circumstances indicate the force of the impact and gives some light upon the question of how fast defendant was driving. Plaintiff was thrown from his car and seriously injured; and his wife, who was riding in the back seat, was also thrown from plaintiff's automobile and against the wayside fence. She was instantly killed.

Defendant did not take the witness stand nor did he offer any other testimony in his defense, and hence the record does not contain his version of how the accident happened. But notwithstanding the absence of defendant's testimony, it is a fair inference from the record that as he approached from

the north plaintiff's automobile was passing over the intersection of these highways in front of defendant's car and therefore within his direct range of vision; but the force of the impact indicates that defendant's rate of speed was slackened little, if any, before the collision. We forego stating other details, but in arriving at decision do not overlook the fact that if these two vehicles had arrived simultaneously at the intersection defendant would have been at the right and for that reason would have had the right of way. 1 Comp. Laws 1929, § 4712. But it is inferable from the testimony that when plaintiff's machine entered the intersection defendant's car was more than 100 feet to the north, and in such event the cited statutory provision would not be applicable. Further, we are mindful that plaintiff's son, who was riding in the front seat with plaintiff, saw defendant's automobile coming south at a point substantially 1,000 feet north of the corner. At that time plaintiff was 300 or 400 feet east of the intersection. He was not advised until after the accident of the son's observation. Intervening obstructions interfered with a continuous view to the north. Plaintiff's son, as well as plaintiff, made a later observation, which failed to disclose the approach of defendant's car. The son testified: "Just as we came into the widening of the intersection I looked to the north and did not see any car coming." It cannot be said that plaintiff was negligent as a matter of law in failing to make a more careful observation to the north before he entered the intersection.

But it is urged by defendant that after plaintiff entered the intersection, and within 17½ feet before he reached the center line of the north and south

highway, he had a clear view to the north, that he could have there made another observation and discovered defendant's oncoming car. But at plaintiff's rate of speed he crossed this space of 17½ feet in two seconds or less. During that time he was properly observing the Ford sedan immediately ahead of him and watching for approaching traffic from the south. Plaintiff's situation was further complicated by the fact that his automobile, because of carburetor trouble, was not operating properly. Appellant is not justified in assuming when plaintiff looked north and saw no vehicle coming within the 100 feet of his range of vision, that nonetheless defendant's car was within that space, that plaintiff failed to observe it, and was therefore guilty of contributory negligence. Instead, it may well be inferred that defendant was so far north that he was not then within plaintiff's range of vision, and had defendant been approaching the intersection at a reasonable rate of speed and with reasonable care he would have timely observed plaintiff, and the latter would have crossed in safety. As plaintiff entered the intersection, he made an observation which reasonably assured him there was no traffic approaching from the north within at least the 100 feet of his range of vision, and as to more distant approaching traffic plaintiff, being first in the intersection, had the right of way and had no warning that such right would not be respected. An important fact in the instant case is that neither of these intersecting highways is a through thoroughfare. In that particular this case materially differs from *Adams v. Canfield, post,* 666. Appellant relies much on *Shoniker v. English,* 254 Mich. 76, but as to contributory negligence that case is markedly different,

in that, by highway regulations, each party was required to stop before crossing the intersection, and, as stated in the opinion: "Neither driver made reasonable observation. * * * Neither had his car under proper control." Under all the circumstances surrounding the accident in the instant case, it cannot be said as a matter of law, that plaintiff was guilty of contributory negligence, or that defendant was free from negligence. The circuit judge was right in holding that the testimony on these issues made a case for the jury.

In support of this appeal, it is urged that the damages awarded by the jury are excessive. The total amount of the verdict and judgment was $14,787.83. Of this amount $3,000 was for loss of the services of plaintiff's wife. Omitting much of detail, it appears from the record that at the time of the accident plaintiff was 47 years of age, a strong, healthy man, employed by the Michigan Central Railroad Company and earning $85 to $90 per month. As the result of this automobile accident he sustained injuries which, the testimony shows, are not only serious and of a permanent character, but will probably result in plaintiff's suffering pain during the remainder of his life, and his present earning capacity, if any, has been reduced to almost a nominal amount. His loss of earnings alone, reduced to present worth, can be readily made to account for practically the full amount of damages awarded other than the $3,000 for loss of the wife's services. Plaintiff sustained a fracture of one or more of the lumbar vertebræ, and following the accident was in a plaster paris cast for approximately three weeks, had suffered much pain prior to the trial, and will continue to suffer pain in consequence of his injuries. He is entitled to recover a very substantial

amount for personal injuries received and pain and suffering. There is testimony of the fair value of services rendered to plaintiff incident to his injuries. Prior to the accident plaintiff's wife was in good health and shown to have been helpful and efficient in and about her household and family duties. There were minor children in the family. Proof of the reasonable value of the kind of services Mrs. Scurlock gave to her husband, in the light of other facts disclosed by the record, was sufficient to justify the amount of damages awarded incident to her death and plaintiff's loss of her services. The damages awarded were not excessive.

We have given consideration to other reasons assigned in support of this appeal, and find that they are not such as would justify reversal, and that detailed recital and review of them would not be helpful to the profession.

Judgment is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.