## FINFERA v. THOMAS et al.
### No. 8537.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1941.

L. G. Vandeveer, of Detroit, Mich. (Ralph E. Wisner and Vandeveer, Vandeveer & Haggerty, all of Detroit, Mich., on the brief), for appellant.

S. T. Mason and James R. Walsh, both of Detroit, Mich. (Mason, Davidson & Mansfield, of Detroit, Mich., on the brief), for appellees Roland and Gilbert Thomas.

James R. Walsh and Paul E. Krause, both of Detroit, Mich., for appellee City of Detroit.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This tort action, arising out of a ground collision between two airplanes, reaches us on appeal by the plaintiff from the judgment of the District Court on a directed verdict in favor of the defendants. The scene of the accident was the Detroit Airport; the time, 8 o'clock in the evening of July 31, 1937, while it was still daylight.

Appellant, a twenty-five year old graduate in mechanical engineering of Ohio State University, had received an air pilot's private license while in college, and had made, in the company of the owner as co-pilot, four or five flights in a small, light Aeronca airplane, equipped with dual controls and designed primarily for student training. The young man was not familiar with the machine, so Mason, its owner, was

teaching him its characteristics, preparatory to permitting him its use for solo flights.

Coming in from the southwest, headed into a northeast wind, appellant circled the field at 500 feet altitude and throttled down about 1,000 feet from the airport. Making observations as he descended and seeing no planes on the ground, but receiving no signals from the signal tower, he landed; and, after rolling an estimated 100 to 200 feet, came to a full stop on the east side of the north and south asphalt and concrete runway. In a pivoting position, he swung the plane to the right and looked for traffic. He saw no moving plane in the near vicinity and, after checking the signal tower and receiving no signal, he assumed that it would be safe to proceed and taxied south toward the apron of the L shaped field at a maximum speed of 7 or 8 miles and an average rate of 4 or 5 miles an hour.

Appellant was sitting on the left-hand side and the copilot on the right-hand side of the plane. Each aviator wore earphones. Appellant, before landing, had been listening to instructions given by the signal tower operator to the pilot of an incoming airliner and knew that a landing would be made in his immediate vicinity; but he had not learned from the conversation how far the airliner was from the airport. Appellant had "a vivid straight eyesight vision toward the south" and, as he taxied along, was looking toward the right, which was the direction from which he expected the airliner to land.

Before starting to taxi toward the apron, appellant looked once to the left, but could not state definitely how far he was from the runway when he looked. On direct examination, he estimated the distance at 200 to 300 feet.

On cross-examination, appellant testified: "I brought my plane around in a sort of a half circle. I swished its tail at that time so I had a view of the sides. That was the time that I looked to the left. That was the only time I looked to the left; and that is when I was 150 feet or more away from the east and west runway. After I glanced to the left, I looked to the right all the time after that, observing the traffic. I looked at the signal tower; I didn't receive any signal. I received no red lights nor green lights nor white lights; nor did I receive any information on the radio. Irrespective of that, I proceeded to cross this runway. I at no time saw the Thomas plane. There was nothing there to obstruct my vision. The field was clear."

Later, he repeated that from the time he turned around on the runway he made no further observation to the east (that is, to his left) "until the impact of the accident." He asserted: "The one thing I did do was keep an eye on the signal tower. * * * If I hadn't been relying on the signal tower, I would have looked more to the east than I did look to the east * * *."

He argued that "it is my claim that there wasn't any moving plane within a distance of 800 feet at the time I made my observation 100 to 150 feet from the point of the accident"; but he admitted that "there wasn't anything that would have obstructed my view if I had looked to the left, when I was a distance of 50 feet from the point of the accident." He did not see the Stinson plane, with which he collided until it was 25 or 30 feet from him—too late to avoid the accident.

The Stinson, a commercial airplane owned by appellees Thomas Brothers, had been parked along the northeast boundary of the apron and was moving west on the east and west runway at an estimated speed of 25 or 30 miles an hour. Appellee Roland Thomas, who was operating it, testified that immediately after leaving the loading ramp, he saw six or seven hundred feet away the plane operated by appellant, parked on the field and not in motion.

Thomas testified: "I didn't see Mr. Finfera land. * * * When I observed him, he was stopped on the field. I knew it wasn't customary for planes to stop on that portion of the field where the plane was stopped. I hadn't any idea where he would go, but I knew he would move. I was looking ahead and to my right out of my plane as I proceeded through that 600 feet. In that distance, I didn't see the plane. I looked ahead. I knew it was over there. Notwithstanding it was over there, I never saw it again until the time of collision."

The propellor of the Stinson plane, located in front, struck the left wing and cut through to the cabin of the plane in which appellant was riding, with the result that appellant sustained serious personal injuries.

When appellant rested his case upon these facts, the District Judge directed a verdict for appellees on the ground that the proof showed appellant had been guilty of

such contributory negligence as would bar his recovery as a matter of law. The District Court found, also, that the operator of the airplane owned by appellees, Thomas Brothers, had been guilty of negligence of such character as to preclude any recovery by them.

Appellant's assignments of error present three propositions. (1) It is insisted that whether he exercised due care before starting to taxi across the field was a question for the jury. Ryan v. Detroit Citizens' Street Railway Company, 123 Mich. 597, 82 N.W. 278; Erdman v. Detroit United Railway Company, 175 Mich. 691, 141 N.W. 542; Lefevre v. Roberts, 250 Mich. 675, 230 N.W. 917; Swainston v. Kennedy, 253 Mich. 518, 235 N.W. 240; Scurlock v. Peglow, 263 Mich. 658, 249 N.W. 35. (2) It is urged that the issue of due care was for the jury, in view of appellant's right to rely upon the maintenance and operation of light and radio signals by the City of Detriot. Lockett v. Grand Trunk Western Railroad Company, 272 Mich. 219, 261 N. W. 306; Motyka v. Detroit, Grand Haven & Milwaukee Railway Company, 256 Mich. 417, 240 N.W. 29; Travis v. Eisenlord, 256 Mich. 264, 239 N.W. 304. (3) The further contention is made by appellant that whether Thomas Brothers were guilty of negligence which proximately contributed to appellant's injury was a jury question, not only by common law but pursuant to Section 4816, 1 Compiled Laws of Michigan for 1929; as was likewise the fact issue of negligence of the City of Detroit "by virtue of maintaining and operating a signal tower and issuing instructions and traffic regulations in connection with the same."

■ No increased hazard of liability, but only normal responsibility is placed upon appellees by virtue of the Michigan Aircraft Statute, supra, which provides: "Sec. 6. The liability of the owner of one (1) aircraft to the owner of another aircraft, or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air, shall be determined by the rules of law applicable to torts on land."

■ Applying this statute to the first insistence of appellant, we find that the Michigan law of torts in relation to collisions amply supports the ruling of the District Court. Most of the authorities cited by appellant concede and none gainsay the principle that whether contributory negligence is a question of law for the court or one of fact for the jury depends upon the circumstances of each particular case.

Lockett v. Grand Trunk Western Railroad Company, 272 Mich. 219, 261 N.W. 306, 308, relied upon by appellant, seems to be strong authority against him. In that case, involving a crossing collision between an automobile and a railroad train, the Michigan Supreme Court held, in denying recovery to the occupants of the automobile, that if the chauffeur "fails to look at all where he has an unobstructed view and where he could undoubtedly have seen the train in time to avoid an accident, had he made any observation, he is guilty of contributory negligence as a matter of law."

In the case at bar, had appellant looked to his left while moving approximately 150 feet toward the runway, he would have had an unobstructed view of the rapidly approaching airplane in time to have avoided the collision. See, also, DeCoopman v. Hammond, 279 Mich. 619, 273 N.W. 290.

■ An automobile driver is bound, in law, to look and to see what he should have seen if the object was plainly visible. Cramer v. Brictson, 286 Mich. 224, 281 N. W. 601, 602.

In the Cramer case, Lefevre v. Roberts, 250 Mich. 675, 230 N.W. 917, cited by appellant, is distinguished as it may likewise be differentiated here, in that the plaintiff had looked and had seen the approaching defendant, and had reached the conclusion that he could safely pass over an intersection, which calculation proved to be an error of judgment—an utterly different situation from a case where "the plaintiff either did not look, or did not see the defendant who certainly was plainly within his vision, and therefore failed to sustain the proof necessary to enable the trial court to submit the question of his due care to the jury."

In addition to the cases already discussed, the following Michigan decisions, in which either directed verdicts were upheld or judgments were reversed because directed verdicts should have been given, impel the conclusion that the course of the trial judge was correct in his direction of a verdict for appellees, on the ground that appellant's own showing established his contributory negligence as a matter of law. Stone v. Duluth, South Shore & Atlantic Railroad Company, 248 Mich. 538, 227 N. W. 786; Richman v. Detroit, Grand Haven & Milwaukee Ry. Co., 254 Mich. 607, 236 N.W. 878; Rosencranz v. Michi-

gan Central Railroad Co., 244 Mich. 137, 221 N.W. 273; Steele v. Hamilton, 218 Mich. 522, 188 N.W. 345. See, also, Hartwick v. Lawson, 290 Mich. 91, 287 N.W. 391; Ackerman v. Michigan Cent. Railroad Company, 249 Mich. 693, 229 N.W. 445.

Read v. New York City Airport, Inc., 145 Misc. 294, 259 N.Y.S. 245, 247, 248, is an interesting outside case in which a trial court held that the pilot of an airplane in colliding with a motortruck as he taxied down the airport runway was guilty of contributory negligence, which barred recovery in that he failed to look carefully for obstructions. Compare another airplane case: Davies v. Oshkosh Airport, Inc., 214 Wis. 236, 252 N.W. 602.

On the second proposition advanced by appellant, we find that his insistence on his right to rely upon light and radio signals from the airport signal tower, operated by the City of Detroit, is not supported by substantial evidence. Appellant, himself, admits that he received no signal; neither red, white, nor green lights were flashed; nor did any message by radio come to him from the tower; and yet, he proceeded to put his plane in motion and attempt to cross the runway.

Rule 19 of the Rules and Regulations of the Board of Aeronautics of Michigan provides that "upon landing upon an airport, a pilot shall assure himself that there is no danger of collision with other aircraft taking off, landing or taxiing before and while taxiing to a line or other part of the airport."

The City had posted on its bulletin board at the airport a bulletin to all pilots which, among other things, gave notice that "the green or white light shall in no instance relieve the pilot from exercising due care and diligence in observing and avoiding other planes in the air or on the ground." The City of Detroit had undertaken no more than to carry out the instructions of the airport manager to tower men, to the effect that whenever they were unoccupied with other duties, they should, if possible, regulate ground traffic as a matter of accommodation. Such custom certainly should not render the City liable in the instant case, where the injured man, without looking toward a known danger zone and without receiving any sort of signal, deliberately placed himself in a perilous position by failing to observe what he admits there was nothing to prevent his seeing, if he had looked. The Michigan authorities which have been cited plainly support this conclusion.

The careless conduct of appellant necessitates the rejection, also, of the third proposition which he has presented. Even if Thomas Brothers were guilty of negligence which combined as a proximate cause with the contributory negligence of appellant to produce the accident and injury, there can be no recovery. Again, see the Michigan decisions which have been cited.

So, also, would appellant's proximate contributory negligence bar his recovery, even if the City of Detroit had breached its legal duty, if any such had existed, with respect to signalling from the tower, or regulating ground traffic by radio. The authorities cited by appellant, to the effect that one who has adopted a customary method of warning in excess of reasonable requirements may not abandon the practice without reasonable care to warn of the discontinuance, are not controlling in the face of the facts of the instant case. Restatement of the Law of Torts, American Law Institute, Sec. 301, page 813; Erie Railroad Co. v. Stewart, 6 Cir., 40 F. 2d 855; Kissenger v. New York & Harlem R. R. Co., 56 N.Y. 538; Leuthold v. Pennsylvania R. Co., 6 Cir., 32 F.2d 758; Pennsylvania R. Co. v. Shindledecker, 6 Cir., 44 F.2d 162.

The evidence in this record portrays a glaring picture of proximate contributory negligence on the part of the appellant, and presents no logical avenue of escape from its destructive effect upon his cause of action.

The judgment of the District Court is affirmed.