GRAZIANO *v.* NEW YORK CENTRAL RAILROAD COMPANY.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   The Supreme Court is bound to view the evidence and draw the reasonable inferences therefrom in the light most favorable to plaintiff when considering an appeal from a directed verdict for defendant.

2. RAILROADS—UNPROTECTED CROSSING—NIGHTTIME—UNLIGHTED LOCOMOTIVE AND TENDER—EVIDENCE—QUESTION FOR JURY.
   Whether or not a westbound, black, unlighted railroad locomotive and tender could have been seen by northbound motorist before they came within the range of his headlights at 9:30 p.m. at an unlighted and unprotected railroad crossing and whether an ordinary, reasonable and prudent person would have noticed the tender under like circumstances in time to avoid the accident were matters for consideration by jury under evidence presented.

3. SAME — UNPROTECTED CROSSING — AUTOMOBILES — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   Whether or not a motorist who does not stop before colliding with a railroad train during the nighttime at an unguarded crossing is guilty of negligence is a question for the jury, where he looks and sees nothing and listens and hears nothing and there is neither signal, noise nor light from the train approaching in the dark.

Appeal from Jackson; Boardman (Harry D.), J. Submitted January 7, 1958. (Docket No. 6, Calendar No. 47,048.) Decided April 15, 1958.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 886.
[2] 44 Am Jur, Railroads §§ 513, 519.
[3] 5A Am Jur, Automobiles and Highway Traffic § 714; 44 Am Jur, Railroads §§ 529, 531, 538.

Case by Donald D. Graziano against New York Central Railroad Company, a Michigan corporation, for personal injuries arising from collision at railroad crossing. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Dahlem & Dahlem* and *Glen L. Fisher,* for plaintiff.

*McKone, Badgley, Domke & Kline,* for defendant.

DETHMERS, C. J. Plaintiff appeals from directed verdict of no cause for action in his suit for damages resulting from collision between his automobile and defendant's locomotive tender at an open, single-track, unprotected and unlighted railroad crossing.

Defendant stresses testimony unfavorable to plaintiff. In appeal from directed verdict for defendant, we are bound to view the evidence and draw the reasonable inferences therefrom in the light most favorable to plaintiff. *Davis* v. *New York Central R. Co.,* 348 Mich 262. The accident occurred at about 9:30 p.m. It certainly was dark. Plaintiff was driving north on a road which was crossed at right angles by the railroad track. He was familiar with the crossing. At a point 130 feet south of the track he slowed down to a rate of speed of from 10 to 15 miles per hour. There were buildings to his right. In daylight, he could have seen past them for a distance of about 200 feet to the east on the track, but at the time in question, it being dark, only about 10 or 15 feet, the reasonable inference being that this was within and the extent of the spread of his headlights to the east of the crossing. He looked to the east for 3 or 4 seconds and listened for a train. No whistle sounded, no bell rang, he heard no train sounds and there were no train lights. At that time, defendant's unlighted locomotive and tender were

being backed westerly toward the crossing. When plaintiff reached a point about 65 feet south of the track, after having reduced his speed to about 5 miles per hour, he looked west and satisfied himself that no train was coming from that direction; and then, when about 55 feet south of the track, he again looked east. At that point, he could have seen 200 feet, or farther, east on the track by daylight. He proceeded toward the track at 5 miles per hour or less, still listening for a train but hearing none, and continuing his observation to the east, his headlights then illuminating the track for a distance of some 7 to 10 feet east of the road on which he was driving. When he reached the track, his automobile being almost at a standstill, he suddenly saw something black come within the range of his headlights. Immediately thereafter a crash occurred between the right front of his automobile and the right rear of the tender, which continued for another 223 feet west of the crossing before coming to a stop. While on the witness stand, plaintiff was asked how much of a view he had had to the east while he was travelling from the point 55 feet south of the track until he reached the crossing and he answered that he "could have seen about 50, 60 feet; maybe 75 feet. I can't exactly say in feet." This answer constituted the testimony least favorable to plaintiff on the subject of visibility to the east. The trial court seized upon it as the basis for holding plaintiff guilty of contributory negligence as a matter of law for not timely having seen the approaching tender and stopped his automobile before reaching the crossing as he readily could have done at its then low rate of speed.

On the question of what and how far to the east plaintiff could have seen as he neared the crossing, there is other testimony, as already noted, and reasonable inferences to be drawn therefrom inconsistent with the above testimony relied upon by the

trial court and more favorable to plaintiff. We refer to the testimony that it certainly was dark, that when plaintiff was 130 feet south of the crossing he could have seen for a distance of 200 feet east on the track by daylight, but at the time in question, after dark, only for a distance of from 10 to 15 feet, a distance apparently limited to the area east of the crossing within the range of his headlights, and that when he was 55 feet or less from the crossing his headlights illuminated the track east of the crossing for a distance of only 7 to 10 feet. It is not an unreasonable inference from this testimony that when plaintiff was at the point 55 feet south of and while he was thereafter approaching the crossing he would scarcely have been able to see east on the track into an area outside the range of his headlights any better than he could when he was 130 feet back, and, further, that as he approached the crossing the extent of the track illuminated by his headlights was gradually narrowing. Likewise, it is to be observed that plaintiff was not asked what he could have seen within the distance of 60 to 75 feet east of the crossing as he approached it. Even if the view of the evidence most favorable to plaintiff would warrant, as it does not, acceptance of his testimony that he could have seen 60 to 75 feet east of the crossing, that testimony is not conclusive of the question whether he could have seen a black, unlighted locomotive and tender in the darkness of the night before they came within the range of his headlights. Neither does it necessarily follow from that testimony, with such certainty as to remove it from the realm of question of fact for the jury, that an ordinary, reasonable and prudent person would have noticed the tender under like circumstances in time to avoid the accident. The latter happens to be the controlling test.

Railroad crossing accident cases cited by defendant as holding that automobile drivers are guilty of contributory negligence as a matter of law for failure to see approaching trains which are plainly there to be seen are: *Richman* v. *Detroit, G. H. & M. R. Co.*, 254 Mich 607; *Gardinear* v. *Pere Marquette R. Co.*, 265 Mich 286; *DePotty* v. *City of Detroit*, 258 Mich 657; *Downey* v. *Pere Marquette R. Co.*, 230 Mich 243; *Brady* v. *Pere Marquette R. Co.*, 248 Mich 406; *Heintzelman* v. *Pennsylvania R. Co.*, 260 Mich 688; *Proctor* v. *Grand Trunk W. R. Co.*, 273 Mich 619; *Lockett* v. *Grand Trunk W. R. Co.*, 272 Mich 219.  In the *Richman Case* this Court said that because the headlights of plaintiff's automobile were turned partly in the direction from which the train was coming, plaintiff would necessarily have seen the train coming if he had looked.  In *Gardinear* plaintiff drove his automobile into the side of a passing train which this Court said he could have seen directly ahead of him in the range of his own headlights in sufficient time to have stopped and avoided the accident if he had made proper observation.  In *DePotty* this Court, invading somewhat, as it seems to me, the fact-finding province of the jury, found that the streetcar (p 659) "must have been in sight of the plaintiff" before the latter saw it and that he would have seen it earlier "if he had looked properly." In *Downey* this Court said that if plaintiff had looked he could have seen the train approaching for a distance of 450 feet.  In *Brady* plaintiff had a view down the track of 700 feet.  In *Heintzelman* this Court said (p 691) that by reason of all the lights present plaintiff, while still in a zone of safety, "could have seen the approaching train on the main tracks had he looked."  In *Proctor* the reasoning as to why the question of plaintiff's contributory negligence was one of law rather than of fact is not at all clear, but this Court noted that the train approaching from

plaintiff's right had a small light on it and stressed the fact that plaintiff was blind in the right eye, indicating that for that reason he should have stopped before crossing the track in order to make the more careful observation which would have revealed the approaching train to him. In *Lockett* the accident occurred at noon on a bright, sunny day and plaintiff could have seen the train approaching seasonably if she had made proper observation. In each of these cases, then, this Court held the plaintiffs guilty of contributory negligence as a matter of law for the reason, as this Court viewed it, that the physical facts disclosed that if plaintiffs had maintained a reasonable and proper lookout they could and would have seen, in sufficient time to avoid an accident, that which was plainly there to be seen, namely, an approaching train. To say that these cases are controlling here is to beg the question whether defendant's approaching train was plainly to be seen by plaintiff if he made proper observation. As above indicated, we think that, viewing the evidence in the light most favorable to plaintiff, it was a question of fact whether plaintiff, on proper observation, would have seen the tender in time to avert the collision. Applicable to the facts in this case are *Gaffka* v. *Grand Trunk W. R. Co.*, 301 Mich 383, and the cases cited therein, and particularly, from *Gaffka,* the following language (p 388) :

"From all these authorities, we conclude that a motorist has a right to assume that trains will be properly lighted and give signals at an unguarded crossing, and, therefore, when it is dark and the motorist looks and sees nothing, and listens and hears nothing, and there is neither signal, noise, nor light from the approaching trains, it becomes a question for the jury to decide whether he was guilty of contributory negligence because he did not also

stop, even though had he done so, the collision would not have occurred."

Reversed and remanded for new trial. Costs to plaintiff.

CARR, KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.