GREUNKE, Respondent, vs. NORTH AMERICAN AIRWAYS. COMPANY, Appellant.

*April 2—April 29, 1930.*

566

For the appellant the cause was submitted on the brief of *Albert H. Krugmeier* and *Joseph Witmer,* both of Appleton.

For the respondent there was a brief by *Frank, Wheeler & Pelkey* of Appleton, and oral argument by *F. F. Wheeler.*

CROWNHART, J.  The appellant, on the day of the accident, operated an airport located between the cities of Appleton and Menasha, and was engaged in maintaining general airport landing facilities, hangar rental service, transportation of passengers, freight, and mail, giving instructions to students, selling airplanes, and generally dealing in accessories to airports.

Elwin West was an agent of the appellant, and was licensed by the Department of Commerce of the United States as an airplane transport pilot and as an aviation mechanic.

The respondent was the owner of an airplane, which he kept at the defendant's airport.  He also was a licensed pilot, holding a transport license from the Department of Commerce.

On the afternoon of the day in question the respondent went to the appellant's airport to take up passengers in his airplane.  He ran his plane out onto a runway to make a test flight.  The airport had several runways intersecting each other at a central point and oriented in different directions.  The runway used by both respondent and West was oriented northeast and southwest.  It was 3,100 feet long and 120 feet wide.  It was narrower than the usual runway.  West preceded the respondent on the runway, with an airplane of the appellant, and took off for a flight with a student who was in training for a pilot.  The respondent followed in his test flight, and while he was in the air West made one or two landings with the student.  The respondent came in and made a landing while West was in the air.  It was what is termed a "dead stick" landing, that is the motor

stalled before the plane landed. As soon as respondent's plane stopped on the runway the respondent got out and endeavored to start the motor so as to remove his plane from the runway, but before he could get the motor started West came in with his plane and landed on the runway, just behind the respondent. West's plane bounded as it struck the runway and collided with respondent's plane, resulting in damage to both planes.

This is the first case in this court involving a collision of airplanes, resulting damages, and the law applicable thereto.

It is conceded that there are no statutes governing the operation and management of the airplanes at the time and place of the accident. The rules of law applicable to torts generally govern in this case. Both pilots were licensed under the United States Department of Commerce, and it may be assumed that they were familiar with the rules of the department applicable to licensed aviators, and that in the exercise of ordinary care they should comply with such rules, and it seems to be conceded that among such regulations are the following:

"The take-off shall not be commenced until there is no risk of collision with landing aircraft and until preceding aircraft are clear of the field."

"A landing plane has the right of way over planes moving on the ground or taking off."

"An aircraft in distress shall be given free way in attempting to land."

The respondent testified to custom among fliers, as follows:

"It is courtesy to the other fellow and a custom among fliers that they try to get an airplane off the runway as soon as possible after landing. It has been the custom to remove the airplane as soon as possible after an accident, but there are different things to be considered in that. It is the custom to remove the airplane either by hand power or otherwise. You can't use the runway for parking, we real-

ize that. . . . It is the practice that the motor is started before the airplane is moved onto the runway for taking off. If the motor is killed before landing, it is the practice to remove the plane without starting the motor as soon as possible. I do not always move the plane off the runway by hand instead of starting the motor."

It appears that a uniform law has been passed by Delaware, Hawaii, Idaho, Indiana, Maryland, Michigan, Nevada, North Dakota, South Dakota, Tennessee, Utah, and Vermont, as follows:

"The liability of the owner of one aircraft, to the owner of another aircraft, or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air shall be determined by the rules of law applicable to torts on land."

The same rule was adopted by Wisconsin in 1929 (sec. 114.06, Stats.). This statute is merely declaratory of common-law principles. The rule of the common law is that every person shall use ordinary care not to injure another. Ordinary care is held to be such care as the great mass of mankind would use under the same or similar circumstances, or such care as the ordinarily prudent person would use under the same or similar circumstances.

The appellant contends that West exercised such care in this case. Appellant contends that owing to the color of respondent's plane, and the reflection of the light from the landing field, it was impossible for West to see respondent's airplane on the runway, and that he did not see it in time to avoid the accident. The appellant further contends that it was the duty of the respondent to remove his airplane from the runway promptly upon landing; that in case his motor was stalled he should have taken his plane by the tail and pulled it off the runway. On the other hand, respondent testified that to take the plane off by the tail would require a direct lift of 200 pounds, and a drag of a load on the

wheels of 1,350 pounds, over a somewhat uneven surface, with ruts two inches deep; that he did not think he was able to so remove his plane, and that ordinarily the quicker and better way was to start his motor and taxi off the field. He testified:

"When I was coming down to make this landing I was not bothered by the sun because when you come to land you come in with a natural glide and above you is the upper wing, and as you come in you are on a slope down, that way; you are looking down directly and the sun don't shine in your eyes. It don't bother you a particle."

A careful examination of the evidence convinces the court that it presented a jury question. However, the instructions of the court cannot be sustained, and we think the error was prejudicial.

The court submitted this question:

"Question No. 1. Did Elwin West, operating a Swallow OX-5 biplane at the time and place in question, fail to exercise the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct and operation of an airplane in making a landing on the runway in an airport under the same or similar circumstances, having due regard to the law regulating the operation of airplanes in making a landing in an airport?"

On this question the court instructed the jury as follows:

"This is a disputed question of fact for you to determine and may be answered 'Yes' or 'No' as you may find the fact to be. The burden of proof to prove an affirmative answer to this question by a preponderance of the evidence to a reasonable certainty is on the plaintiff, Greunke. While the law and the regulations provide that the landing plane has the right of way over the plane moving on the ground, or taking off, that provision of law does not relieve the pilot from the duty to exercise ordinary care. It is the duty of every pilot operating an airplane to exercise the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct and opera-

tion of an airplane in making a landing on a runway in an airport under the same or similar circumstances, having regard to the law regulating the operation of the airplane in making a landing when landing in an airport. You will, therefore, consider all the evidence on this question, and if you are satisfied by a preponderance of the evidence to a reasonable certainty that Elwin West, operating a Swallow OX-5 biplane, at the time and place in question, did fail to exercise the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct and operation of an airplane in making a landing on a runway in an airport under the same or similar circumstances, having regard to the law regulating the operation of airplanes in making a landing in an airport, then you will answer this question No. 1 'Yes.' If you are not satisfied by a preponderance of the evidence to a reasonable certainty you will answer this question No. 1 'No.' "

It was not the duty of West "to use the *highest* degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct and operation of an airplane in making a landing on a runway in an airport under the same or similar circumstances," but it was his duty to use ordinary care, as that term has been so often defined to mean. Ordinary care differs under different circumstances. It is such care as the danger of the situation and the consequences that may follow an accident demand. The care used must be commensurate with the dangerous consequences to be reasonably apprehended. Ordinary care is the same at all times, but ordinary care may be a high degree of care under some circumstances, and slight degree of care under other circumstances. Ordinary care, however, is not "the *highest* degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct" of any pursuit. On the contrary, it is the degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of their affairs. Without doubt the appellant was required to use a high de-

gree of care, which would be the care that the great mass of men so circumstanced as he would ordinarily use. *Phillips v. Wis. State Agricultural Society,* 60 Wis. 401, 19 N. W. 377; *Harper v. Holcomb,* 146 Wis. 183, 130 N. W. 1128; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036.

The circuit court evidently had in mind, in framing the questions and instructions, the rule applicable in carrying passengers for hire.

The erroneous instruction of the court became specially prejudicial by reason of the form of the question, which used the same erroneous expression.

We hold the instruction of the court was erroneous and prejudicial in the respects indicated.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.