AIR WISCONSIN, INC., and Insurance Company of North America, Plaintiffs-Respondents-Petitioners,

v.

NORTH CENTRAL AIRLINES, INC., Defendant-Appellant.

Supreme Court

*No. 77–889. Argued September 2, 1980.—
Decided September 30, 1980.*

(Also reported in 296 N.W.2d 749.)

For respondents-petitioners there was a brief by *Peter S. Nelson* and *Fulton, Menn & Nehs, Ltd.*, of Appleton, and oral argument by *Peter S. Nelson.*

For defendant-appellant there was a brief by *George W. Curtis, Curtis, MacKenzie, Haase & Brown, S. C.*, of Oshkosh, and *Lord, Bissell & Brook* of Chicago, Illinois, with oral argument by *George W. Curtis* of Oshkosh and *Hugh Griffin* of Chicago.

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed August 17, 1979, which reversed a judgment entered by the circuit court for Outagamie county, Gordon Myse, Circuit Judge, in favor of plaintiff Air Wisconsin, Inc. The court of appeals remanded the case for a new trial

on the issue of liability.[1] We affirm the decision of the court of appeals.

On review two issues are presented. Both involve the following jury instruction on forfeiture of right of way by speeding:

*"A pilot of an aircraft having the directional right of way may lose the right of way privilege under certain circumstances. Where the pilot of an aircraft approaching another aircraft from the right operates his aircraft at an unlawful rate of speed, he forfeits his right of way privilege. Forfeiture of the right of way, however, does not transfer the privilege of right of way to the other aircraft."*

The first issue is whether defendant North Central Airlines, Inc., waived its right to appellate review of this instruction because it failed to specify on the record the reasons for its objection to the instruction. The second issue is whether this instruction is a misstatement of the law. The court of appeals concluded that the defendant did not waive its objection to the instruction and held that the instruction is an erroneous statement of the law. We hold that the defendant did not preserve its objection for appeal, that the instruction is erroneous, and that the judgment entered by the circuit court must be reversed in the interest of justice.

## I.

In the late morning of June 29, 1972, an aircraft owned and operated by Air Wisconsin, Inc., the plain-

---

[1] In the last paragraph of the opinion, the court of appeals concluded that it must "remand for a new trial on the issue of negligence." The mandate reads, in part, "cause remanded for a new trial on liability." The plaintiff argues that the court of appeals intended the new trial to be limited to negligence and would not be concerned with causation. It is clear from the opinion that a new trial on the issue of liability is intended.

tiff, collided with one leased and operated by North Central Airlines, Inc., the defendant. Plaintiff's plane, a DeHavilland DHC–6 aircraft, was en route from Sheboygan to Appleton. The defendant, flying an Allison Corvair CV–580, was en route from Green Bay to Oshkosh. The aircraft collided over Lake Winnebago near Appleton. Both planes were destroyed. There were no survivors.

The plaintiff and its insurer, Insurance Company of North America, brought this action against the defendant, alleging negligence and seeking damages. The trial commenced on October 27, 1977, and was concluded on November 4, 1977. Expert testimony was offered by both parties. At trial much of the effort was directed to prove the critical facts, *e.g.*, the speed and flight path of each aircraft and the precise position of each plane immediately preceding impact. The parties also offered proof as to the Federal Aviation Administration regulations applicable to the circumstances.[2] Not surprisingly, in view of the fact that the aircraft collided at approximately 2,500 feet at substantial speed and without survivors, nearly all the critical facts of the accident were in dispute. The parties disagreed as to the weather conditions, the precise direction which each aircraft was traveling at the time of the impact, which if either of the planes had the right of way, and whether the defendant's plane was traveling at a rate of speed in excess of the Federal Aviation Administration prescribed limit.

On the last day of trial, after the last witness had testified and before arguments to the jury, the trial court excused the jury and discussed with counsel, in open court, the admission of certain exhibits offered

---

[2] The then applicable rules governing the operation of aircraft within the United States were set forth in 14 CFR 91, subchapter F, "Air Traffic and General Operating Rules."

earlier. The trial court then went on to discuss instructions, after explaining that an earlier informal discussion regarding instructions had been held and that a conference on instructions would be held before the instructions were given. The trial court stated that the plaintiff had "requested an instruction to the effect that a plane traveling at a speed greater than that which is permitted forfeits right of way." The trial court, without commenting whether defendant opposed the instruction, concluded that "[the instruction] is in conformity with the statutory provisions in the operation of a motor vehicle which, by statute of the State of Wisconsin, has been applied to rules of aviation" and further stated that "unless contrary authority can be shown" it would give this instruction as requested by the plaintiff. Without interruption, the trial court then immediately went on to discuss plaintiff's request for another instruction, this one relating to right of way for landing aircraft.[3] The trial court then summarized the proposed instruction on right of way for landing aircraft and plaintiff's and defendant's opposing positions on this instruction and ruled that it would not give the instruction. The trial court stated that plaintiff's exception to this adverse ruling "will be noted for the record." The trial

---

[3] "*The Court:* Gentlemen, we have talked about instructions informally. Because you are preparing your final arguments, I wish to make certain rulings for the record. We will have a conference on instructions before the instructions are given.

"It is my understanding first that Mr. Menn has requested an instruction to the effect that a plane traveling at a speed greater than that which is permitted forfeits right of way. It is in conformity with the statutory provisions in the operation of a motor vehicle which, by statute in the State of Wisconsin, has been applied to rules of aviation. Unless authority to the contrary can be shown, I will give such a requested instruction. Mr. Menn has also requested an instruction as it goes to right of way for landing an aircraft . . . ."

court then said that closing argument would commence twenty-five minutes thereafter. Counsel for defendant then immediately spoke up about defendant's objection to plaintiff's request for the first instruction, saying:

"*Mr. Curtis* [for defendant]: Mark (Mr. Mark Stageberg) [another counsel for the defendant] just asked if it was on the record, and I am sure it was noted by the Court, that we obviously object to the forfeiture of the right of way.

"*The Court:* Give me some authority to the contrary, Mr. Curtis.

"*Mr. Curtis:* I was afraid you were going to say that.

"*The Court:* Yes. Gentlemen, twenty-five minutes, and we will start our arguments."

The court recessed, and after this short recess, counsel addressed the jury. The trial court then excused the jury for lunch, held an on-the-record discussion of exhibits, and then said to counsel: "We will see you back here for the conference on instructions at 2:00 o'clock." At 2:00 p.m. an on-the-record conference of the trial court and counsel was held in the court's chambers outside the presence of the jury. The trial court identified jury instructions from the Wisconsin Jury Instructions—Civil that it proposed to give and set forth in full instructions which were specifically designed for this case. The trial court's recitation of instructions which it intended to give included the "forfeiture of right of way instruction" quoted previously. After completing the list and language of the instructions to be given, the trial court asked:

"Does counsel for the plaintiff have any objection to the instructions I have identified?

"*Mr. Menn* [for plaintiff]: No.

"*The Court:* Counsel for the defendant have any objections to the instructions I have identified?

"(No response by defense counsel.)"

The conference on instructions over, the court and counsel proceeded to the courtroom, and the jury was instructed.

After the instructions were read, the trial court inquired of counsel:

"Gentlemen, I ask whether you have any objection to the instructions as given.

"*Mr. Menn* [for plaintiff] : No.

"*Mr. Curtis* [for defendant] : No."

During the jury's deliberations, the jury requested reinstruction as to "possible loss of right-of-way" and the trial court reread the entire instruction relating to right of way and its forfeiture. After the instruction was read, a juror requested that the trial court repeat "about the last two sentences of the instruction where he forfeits." The trial court responded to the juror's request by paraphrasing the forfeiture-for-speed portion of the instruction as follows:

"If a plane on the right is operating at an unlawful rate of speed, he may forfeit his privilege of right of way, but the plane on the left does not gain the right of way if such a forfeiture occurs."[4]

The jury retired to the jury room and after further deliberation returned a verdict finding both plaintiff and defendant causally negligent and attributing 35 percent of the total causal negligence to plaintiff and 65 percent to the defendant.

Defendant's motion after verdict for a new trial was based in part on alleged error in the forfeiture-of-right-of-way instruction. The trial court denied the motion for a new trial.

---

[4] The attorneys for the parties were not present at the reinstruction but had consented to reinstruction in their absence.

## II.

We first consider whether defendant preserved its claim that the forfeiture-of-right-of-way instruction was an erroneous statement of the law.

Sec. 805.13(3), Stats., governs the role of the trial court and counsel in formulating instructions and verdict questions and the manner of objecting to instructions.

Sec. 805.13(3), Stats., states:

"(3) INSTRUCTION AND VERDICT CONFERENCE. At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."[5]

The statute provides that the court shall conduct a conference with counsel outside the presence of the jury to formulate instructions and special verdict questions. The statute provides that counsel may file motions requesting instructions and verdict questions, that the court inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit, and that counsel may object to the proposed instructions or verdict, "stating the grounds for objecting with particularity on the record." The

[5] Sec. 805.13, Stats., replaced sec. 270.21, Stats. Subsection (3), however, is a new provision.

statute further provides that "[f]ailure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."[6]

To determine whether defendant complied with the requirements of sec. 805.13(3), Stats., to preserve its objection, we shall analyze the three colloquies between the trial court and counsel with regard to instructions, which we have previously described.

The first on-the-record discussion was held at the close of the evidence and before arguments to the jury as prescribed by sec. 805.13(3), Stats. At this time the trial court said that it was going to make rulings on instructions, again as required by sec. 805.13(3). The record of this conference is clear: the defendant objected to the forfeiture instruction, but the defendant did not state the grounds for the objection. On appeal, defendant asserts that it set forth its reasons for the objection in the off-the-record discussion (to which the trial court referred), which occurred before the trial court went on the record. At oral argument before this court, defense counsel summarized the off-the-record discussion of the jury instructions as follows: The conference was held on the last day of the trial; the plaintiff for the first time introduced the forfeiture instruction into the case; defendant's counsel set forth the reasons for its objection to the instruction; the trial court requested citations to Wisconsin cases to support defense counsel's posi-

---

[6] This language in sec. 805.13(3) is substantially similar to the language used in sec. 805.11, Stats., which deals with objections to rulings or orders of trial courts. Sec. 805.11, Stats., provides:

"805.11  **Objections; exceptions.** (1) Any party who has fair opportunity to object before a ruling or order is made must do so in order to avoid waiving error. An objection is not necessary after a ruling or order is made.

"(2) A party raising an objection must specify the grounds on which the party predicates the objection or claim of error."

tion that the forfeiture instruction should not be given; defendant's counsel did not supply authority for its argument.[7] At oral argument, plaintiff's counsel neither disputed defense counsel's summary of the off-the-record conversations nor confirmed it. We do not regard counsel's recollection of an off-the-record trial court conference as obviating the requirements of sec. 805.13(3), Stats.

The purpose of the rule requiring that the grounds for objection be stated on the record is to afford the opposing party and the trial court an opportunity to correct the error and to afford appellate review of the grounds for the objection. This court has stated that, in the absence of a specific objection which brings into focus the nature of the alleged error, a party has not preserved its objections for review. *Roehl v. State,* 77 Wis. 2d 398, 414, 253 N.W.2d 210 (1977) ; *Peeples v. Sargent,* 77 Wis.2d 612, 636, 253 N.W.2d 459 (1977) ; *Upton v. Tatro,* 68 Wis.2d 562, 574, 229 N.W.2d 691 (1975) ; *Savina v. Wisconsin Gas Co.,* 36 Wis.2d 694, 702, 154 N.W.2d 237 (1967). *See also,* 3 Harvey, *Wisconsin Practice* sec. 5162 (1975) ; 9 Wright & Miller, *Federal Practice and Procedure: Civil* sec. 2554 (1971) ; 5A Moore's *Federal Practice,* para. 51.04 (2d ed. 1980). *Cf.* sec. 901.03(1)(a), Stats.

When the informal discussion of the instructions commenced, defense counsel could have requested that the arguments on the motions for instructions be reported.

---

[7] The defendant in its brief states that the presentation of the instruction by plaintiff on the day of conference deprived it of the opportunity to gather "contrary authority." However the defendant does not argue that it requested or needed additional time in order to get "contrary authority" or to set forth the grounds upon which it objected to the forfeiture instruction. Defendant's position is that it had stated the objection and the grounds at the unreported informal conference.

*Cf.* sec. 757.57, Stats. If counsel was not successful in having the conference on the record, counsel had to be sure that at the first opportune moment the objection and the grounds therefor would be made part of the record. Counsel realized that he had to state his objection on the record and did so. Counsel did not, however, specify the grounds of the objection on the record, although the trial court's request for citations could arguably be interpreted as an invitation or an opportunity to do so.

Because the record does not set forth the grounds upon which counsel objected to the instruction and upon which the trial court ruled, we conclude that the alleged error in the instruction was not preserved for appeal by defense counsel's general objection at this first on-the-record colloquy relating to the instructions.

It is arguable that this initial on-the-record conference relating to instructions was not the complete sec. 805.13(3) instruction conference because the trial court did not inform counsel of the instructions and verdict it proposed to submit as sec. 805.13(3) appears to require. Consequently, defendant could argue that its failure to object at the first on-the-record conference does not constitute a waiver of the error.

A second on-the-record conference relating to instructions was held after argument to the jury but prior to the reading of the instructions. Although under sec. 805.13(3), Stats., the instruction conference is to be held before argument to the jury, the trial court did refer to this second conference as the "conference on instructions," and it appears that the defendant might have preserved the alleged error for appellate review by objecting to the forfeiture instruction at this second instruction conference.[8]

[8] Sec. 805.13(3), Stats., leaves unclear whether the instruction conference can be one conference or several conferences and the

The record is clear, however, that the defendant made
no objection to the forfeiture instruction at this second

timing of the trial court's setting a time for counsel's motions, of
counsel's filing motions for instructions and verdict questions, of the
trial court's notification to counsel of its rulings on the motions,
of the trial court's advising counsel of the instructions proposed, and
counsel's making objections to the instructions. The ambiguity
created by sec. 805.13(3), Stats., and the misunderstanding pos-
sible as to the procedure being followed by the court, mandates
that a full record be made of each of the steps under sec. 805.13
(3) so that counsel is given a full opportunity to make and pre-
serve objections to the instructions and verdict questions. Attor-
ney Patricia Graczyk, in *The New Wisconsin Rules of Civil Pro-
cedure: Chapters 805–807,* 59 Marq. L. Rev. 671, 700, 701 (1976),
summarizes the problem as follows:

"Subsection (3) authorizes the trial judge to set a time for
written motions requesting jury instructions and submitting pro-
posed special verdict questions. The time set may be at either a
post-evidence conference, which this rule institutes, or an earlier
point in the proceeding, as long as the court's order is reasonable.
Since it is impossible to determine finally what instructions will
be appropriate except in light of an evidentiary record and simi-
larly, since it is impossible to determine the precise composition of
a special verdict form except in light of expert testimony gen-
erally presented at the close of trial, it is doubtful whether the
court may 'reasonably' require submission of the instructions or
special verdict form prior to any evidence or perhaps even prior
to the close of plaintiff's case.  .

"Subsection (3) requires the court to inform counsel of the
proposed instructions and special verdict questions, although the
rule does not state when this notification must be made or wheth-
er the court must inform counsel of the precise language which
the court will use. Presumably, notification of counsel may occur
prior to the post-evidence conference.

". . .

". . . By the terms of the rules, a party has preserved his claim
of error based on either erroneous or incomplete instructions as
long as he objects no later than at the post-evidence conference
to the instructions which the judge proposes to serve whether or
not he has requested an instruction in the first instance.

"By permitting counsel to withhold objections to an instruction
which the judge proposes to give without a waiver until the post-

instruction conference. The record shows that counsel for defendant remained silent when the trial court asked if the defendant had any objection to the instructions which the trial court said it would give. It is thus apparent that the alleged error in the instruction was not preserved for appeal by defense counsel at this second on-the-record conference on instructions.

Defendant argues that it need not have said anything at this second conference because the court had ruled on the instruction at the first conference and sec. 805.11 (1), Stats., provides that "an objection is not necessary after a ruling or order is made." We do not think sec. 805.11 (1), Stats., is applicable under the circumstances of this case where the objecting party had not at the time of the questionable ruling effectively stated its objection and the reason therefor on the record, where the trial court expressly asked if there were objections, and where sec. 805.13 (3), Stats., can be interpreted to require counsel to make his objections at this "last" conference on instructions. Moreover, it is arguable that the trial court had not ruled finally on the instruction at the first conference. At that conference the trial court stated that it would give the instruction unless it was provided with authority to the contrary. The defense counsel did not advise the trial court whether or not it had such authority and the trial court may be viewed as making the final decision to include the instruction at the second conference. Thus even assuming

---

evidence conference, subsection (3) is inconsistent with the provisions of section 805.11(1), governing objections and rulings. Under section 805.11(1) any party who is given fair opportunity to object to a ruling must do so promptly in order to preserve a waiver of his claim of error. Under this subsection, although counsel may have been informed of the proposed instructions and special verdict questions before the post-evidence conference, it appears that he has not waived his objections until that point."

the applicability of sec. 805.11(1), Stats., counsel should have pressed the objection until a ruling had been clearly made on the record.

After the instructions were read to the jury, the trial court and counsel engaged in a third on-the-record discussion of the instructions. The court asked if counsel had any "objection to the instructions as given." Counsel for both parties responded "No." We do not construe this negative response by defendant's counsel as waiving any substantive objection to any instruction. We believe the trial court was asking counsel whether counsel were satisfied that the instructions which the court had decided to give were read to the jury in full and without error. The trial court was giving counsel an opportunity to point out any material variance or omission between the instructions which the court intended to read and the instructions as read.[9]

The defendant argues that notwithstanding any defects in its objection, its objection was not waived. Defendant relies on *Randolph v. State*, 83 Wis.2d 630, 638, 266 N.W.2d 334 (1978), in which this court said "that an objection to jury instructions will not be waived when the instruction misstates the law, rather than be-

---

[9] Sec. 805.13(4), Stats., provides:

"(4) INSTRUCTION. The court shall instruct the jury before or after closing arguments of counsel. Failure to object to a material variance or omission between the instructions given and the instructions proposed shall not constitute a waiver of error."

Attorney Graczyk comments on the last sentence of subsection (4) as follows:

"The last sentence of this subsection states that once an objection has been made to the 'instructions proposed,' *i.e.*, the proposed instructions decided upon by the trial court, no later than the post-evidence conference, an objection to the instructions actually given is not necessary to preserve error for review. This provision is consistent with the treatment of objections to rulings in general under section 805.11(1)." *The New Wisconsin Rules of Civil Procedure: Chapters 805–807*, 59 Marq. L. Rev. 671, 701 (1976).

ing simply imperfect or incomplete." *Randolph* is not relevant to the case at bar, because sec. 805.13(3), Stats., was not applicable in the *Randolph* case, trial having commenced prior to January 1, 1976. Sec. 801.01(3), Stats.

Sec. 805.13(3), Stats., has recently been interpreted by this court in *Gyldenvand v. Schroeder,* 90 Wis.2d 690, 280 N.W.2d 235 (1979), and in *Clark v. Leisure Vehicles, Inc.,* 96 Wis.2d 607, 277 N.W.2d 333 (1980). In both cases this court held that counsel's failure to object to a special verdict question constituted a waiver of any and all objections to the question. In each case we rejected counsel's claim that the right to review was not waived by failure to object because the error went to substance, not form. We held that sec. 805.13 (3), Stats., abolished the form-substance distinction made in earlier cases.[10]

While in the *Gyldenvand* and *Clark* cases the alleged error was in the verdict question and in the instant case the alleged error was in the jury instruction, sec. 805.13(3), Stats., does not on its face differentiate between the instruction and the verdict question. We con-

[10] In *Gyldenvand, supra,* 90 Wis.2d at 696–697, we quoted with approval Attorney Patricia Graczyk's interpretation of sec. 805.-13(3), Stats., in *The New Wisconsin Rules of Civil Procedure: Chapters 805–807,* 59 Marq. L. Rev. 671, 700 (1976):

"The new rule [subsection (3)] permits counsel to object to the instructions proposed by the judge on the grounds of 'completeness or other error,' thereby eliminating the distinction between instructions which have material omissions and instructions which inaccurately state the law. Under the former practice, when an instruction given was incomplete, counsel had a duty to object at the time the instruction was given or else waive his claim of error, whereas if the instructions given erroneously stated the law, counsel was not required to object, but simply had to move for a new trial on that ground. Under subsection (3) counsel must object to an instruction which he considered to be inadequate on any ground."

clude therefore that for purposes of making proper objections, the two should be treated the same.

We hold that defendant did not preserve its objection for appellate review. Defendant did not preserve its objection to the instruction at the first conference because it failed to specify the grounds upon which it objected. Defendant did not preserve its objection at the second conference because it did not state any objection to the instruction.

Though we conclude that defendant waived the error, this court is not precluded from reviewing the claimed error in the instruction. In *Clark v. Leisure Vehicles, Inc., supra,* 96 Wis.2d 607, 277 N.W.2d 333 (1980), the court held that although the party had waived the claimed error in the special verdict by failing to make an objection at the instruction and verdict conference, the court would review the claimed error pursuant to sec. 751.06, Stats., which provides:

"**751.06 Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

Resort to sec. 751.06, Stats., is discretionary with this court, and this court does not apply a mechanistic formula to determine whether it should exercise its discretionary power because justice has miscarried. *Lorenz*

*v. Wolff*, 45 Wis.2d 407, 414, 415, 173 N.W.2d 129 (1970). On the basis of the record before us, we cannot say that defendant would probably win on a retrial, *Savina v. Wisconsin Gas Co.*, 36 Wis.2d 697, 704, 154 N.W.2d 237 (1967), but we can conclude that the instruction played a significant role in the jury's determination of causal negligence, and that the instruction, if erroneous, prevented the defendant from having a full, fair trial of the issues of the case. The jury's concern with the issue of right of way and with the possibility that speeding would cause a forfeiture of the right of way, is clearly demonstrated by the jury's twice requesting reinstruction on the issue of forfeiture of right of way. As a result the jury heard the forfeiture-of-right-of-way instruction three times—first at the initial reading of all the instructions, second at the reinstruction when the entire right-of-way instruction was read; and third when the trial court paraphrased the forfeiture part of the instruction. We conclude that if the law as to the significant issue of forfeiture of right of way was misstated, as the defendant contends, there was a probable miscarriage of justice because the issue of liability has not been fully or properly tried. Accordingly, we conclude that in the interest of justice we shall review the question posed by the defendant on appeal that the forfeiture-of-right-of-way instruction is a missatement of the law.

### III.

The following instruction on right of way, the last three sentences of which are in dispute, was given to the jury:

"Right of way is defined as the privilege of the immediate use of the air space. When two planes converge at approximately the same altitude, except head-on or nearly so, the aircraft to the other's right has the right

of way. When this rule gives another aircraft the right of way, the pilot of the plane not having the right of way shall give way to the aircraft and may not pass over, under or ahead of it unless well clear. *A pilot of an aircraft having the directional right of way may lose the right of way privilege under certain circumstances. Where the pilot of an aircraft approaching another aircraft from the right operates his aircraft at an unlawful rate of speed, he forfeits his right of way privilege. Forfeiture of the right of way, however, does not transfer the privilege of right of way to the other aircraft."* (Emphasis supplied.) [11]

Plaintiff contends that the latter part of the instruction relating to forfeiture of right of way is a correct statement of the law, because it is based on sec. 346.18 (1), Stats. of the Vehicle Code, which is made applicable to airplanes by sec. 114.06, Stats. Defendant maintains that the legislature did not intend sec. 346.18(1), Stats., to apply to planes and that if sec. 346.18 (1) were deemed applicable, the statute is invalid because federal law has preempted state regulation. [12]

[11] The first part of the instruction defining right of way is not in issue. It is derived from the FAA regulations. 14 C.F.R. sec. 91.67 (1972) provides:

"Sec. 91.67   **Right-of-way rules; except water operations.**

"(a) *General.* When weather conditions permit, regardless of whether an operation is conducted under Instrument Flight Rules or Visual Flight Rules, vigilance shall be maintained by each person operating an aircraft so as to see and avoid other aircraft in compliance with this section. When a rule of this section gives another aircraft the right of way, he shall give way to that aircraft and may not pass over, under, or ahead of it, unless well clear.

". . .

"(c) *Converging.* When aircraft of the same category are converging at approximately the same altitude (except head-on, or nearly so) the aircraft to the other's right has the right of way."

[12] The preemption doctrine is rooted in the supremacy clause of the United States Constitution, Article VI, Cl. 2, which states:

Sec. 346.18 is part of Chapter 346, which is entitled Rules of the Road, and Chapter 346 is part of the State Vehicle Code. Sec. 346.18, Stats., states the general rules of right of way covering numerous eventualities including who has the right of way when a vehicle is turning left at an intersection, or is moving from parked position, or is entering an alley or driveway from the highway.

Subsection (1) of sec. 346.18, Stats., describes who has the right of way at an intersection and is the only reference in sec. 346.18 to speed forfeiting the right of way:

"346.18 **General rules of right of way.** (1) GENERAL RULE AT INTERSECTIONS. . . . when 2 vehicles approach or enter an intersection at approximately the same time, the operator of the vehicle on the left shall yield the right of way to the vehicle on the right. *The operator of any vehicle driving at an unlawful speed forfeits any right of way which he would otherwise have under this subsection.*" (Emphasis added.)

The FAA regulations do not provide for forfeiture of right of way for speeding.

The Vehicle Code defines vehicle as "every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except railroad trains." Sec. 340.01(74), Stats. Highway is defined as "all public ways and thoroughfares and bridges on the same." Sec. 340.01(22), Stats. Thus the Vehicle Code on its face does not rule out its applicability to airplanes and air travel. Chapter 346, however, makes no specific reference to planes or flying.

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

It becomes obvious on reading Chapter 346 that it was written for surface transportation, and it was not written with airplanes and "air highways" in mind. If the legislature intended Chapter 346 to encompass air traffic, we think it would have expressly so stated or it would have enacted one or more provisions in Chapter 346 specifically relating to airplanes. A determination that Chapter 346 is applicable to air traffic would engender a host of statutory interpretation problems. For example, in the instant case, if sec. 346.18(1), Stats., is applicable to air traffic, we would have to determine the meaning of the statutory phrase "approach or enter an intersection" as it relates to air traffic.

Nevertheless, the plaintiff argues that sec. 346.18(1), Stats., is made specifically applicable to airplanes by sec. 114.06, Stats., which provides that liability for damage in aircraft collisions on land or in the air is to be determined by "the rules of law applicable to torts on land." Sec. 114.06, Stats., states:

"114.06  **Inter-aircraft liability.** The liability of the owner of one aircraft, to the owner of another aircraft, or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air shall be determined by the rules of law applicable to torts on land."

We do not agree with plaintiff's reading of sec. 114.06, Stats. We conclude that sec. 114.06 is a general statement of legislative policy that parties in aviation accidents have the same remedies as are available to those individuals in accidents on land and that the general concepts of tort law applicable to accidents on land govern accidents in the air.

In *Greunke v. North American Airways Co.*, 201 Wis. 565, 569, 230 N.W. 618 (1930), this court, noting that

sec. 114.06 is a uniform law which has been passed in several states, interpreted the section as "merely declaratory of common law principles. The rule of the common law is that every person shall use ordinary care not to injure another." The court went on to explain that in the exercise of ordinary care, pilots should comply with federal rules applicable to aviators, and the court referred to the federal rules relating to right of way to determine the exercise of reasonable care by the parties involved in that case.

Four years later this court, adhering to its decision in *Greunke,* concluded in *Davies v. Oshkosh Airport, Inc.,* 214 Wis. 236, 252 N.W. 602 (1934), that the pilot's duty in the operation and control of the airplane is to exercise ordinary care. The court went on to say that a pilot who landed voluntarily while his vision was obscured would be negligent as a matter of law, explaining its conclusion as follows:

"In respect to the care which the great mass of pilots so circumstanced ordinarily uses in landing, the uncontradicted testimony of a pilot, who was called by plaintiff to testify as an expert, was that a pilot is not to land until he has seen that he has a clear place on which to land, and that safe piloting requires that he make as many turns as possible before landing so as to be able to see what is on the ground below. Those are obviously reasonable and necessary requirements. They are entirely in accord with the rule of law, which was established independently of any statute, that in operating an automobile a driver is negligent, as a matter of law, if he proceeds at a time when he is unable to see because his vision is obscured by smoke, or dust, or darkness, etc. . . ." *Davies v. Oshkosh Airport, Inc.,* 214 Wis. 236, 238, 252 N.W. 602 (1934).

The plaintiff contends that in *Davies* the court made the automobile law of duty to look out applicable to flying. We believe the plaintiff misconstrues the opinion. The court did not hold that rules applicable to

automobile traffic are applicable to air traffic. The court referred to automobile law to demonstrate the existence of a generally-accepted principle in the law of negligence that a person cannot proceed when his vision is obscured. The common law doctrine of negligence which had evolved as to automobiles was appropriate to be made applicable to air flights.

We believe that the history of ch. 114, Stats., supports the *Greunke* and *Davies* decisions and further shows that the legislature intended that if any airplane traffic rules were to be promulgated for Wisconsin flights, the rules would be established by a state agency regulating aeronautics and would conform to federal air traffic rules.

Chapter 114, Stats., was enacted in 1929 (ch. 348, Laws of 1929), and to a large extent adopted the Uniform Aeronautics Act which was approved by the National Conference on Uniform State Laws in 1922.[13] Sec. 114.06, Stats., discussed previously, is derived verbatim from the Uniform Aeronautics Act. The legislature also adopted sec. 114.21, Stats., in 1929, which was not in the 1922 Uniform Aeronautics Act. Sec. 114.21, Stats., required aircraft operating within Wisconsin to comply with air traffic rules identical with those promulgated by the United States Department of Commerce. Sec. 114.21, Stats. 1929, stated:

"**114.21 Aircraft rules.** Aircraft operating within this state shall comply with air traffic rules identical with those promulgated by the department of commerce of the United States."

The Uniform Aeronautics Act did not contain a provision comparable to sec. 114.21 because the federal Air Commerce Act giving power over aviation to the department of commerce was not enacted until 1926. Sec. 114.21 is,

---

[13] Sec. 114.06 is section 6 of the Uniform Aeronautics Act, 11 Uniform Laws Annotated. This Uniform Act was approved by the National Conference of Commissioners on Uniform State Laws

however, in conformance with the principles of the Uniform Act. According to the Report of the Committee on a Uniform Aviation Act to the National Conference, the general consensus was that federal legislation, rather than state legislation, was essential to regulate air traffic. The Committee's recommendation, which was accepted by the Commissioners, was that the Uniform Act not include any provision authorizing the state to enact regulations controlling intrastate aviation.[14] The Committee reported:

in 1922 and was adopted by Wisconsin by ch. 348, Laws of 1929. This Uniform Act was withdrawn by the National Conference in August 1943.

[14] Thus section 8 of the Uniform Act, which as originally proposed provided for state regulation of aviation, was omitted in the final version:

"SECTION 8. [Regulation of aviation.] The power and the duty to regulate intrastate aviation within this State is vested in the [ ]. He shall prepare and promulgate such regulations controlling intrastate aviation within this State as are necessary for the protection of the public and the development of aviation, including regulations

"(a) for the departure, flight and landing of aircraft;

"(b) for the control and management of airdromes and landing places;

"(c) for the carriage of passengers and freight by aircraft;

"(d) for the issuance, suspension and revocation by him of licenses for aviators and aircraft;

"(e) for the establishment of aerial travel routes;

"(f) for the prescription of areas over which all flight shall be prohibited.

"All regulations promulgated by the [ ] for the control of aviation shall be printed at least [six times in each of three newspapers] published within the State before such regulations shall take effect." 1921 Handbook of the National Conf. on Comm'rs on Uniform State Laws 294; 1922 Handbook of the National Conf. of Comm'rs on Uniform State Laws 326.

For a discussion of the problems facing state and federal regulation of aviation in the 1920's and of the doubt as to Congress' constitutional power to regulate aviation, *see* Bogert, *Problems in Aviation Law*, 6 Corn. L.Q. 271 (1921).

■

"[I]f the rules for intrastate aerial navigation are different from those applying to interstate flight, confusion and danger to interstate flight may well ensue . . . . [I]t is wise to omit the sections of the [proposed] Uniform State Act which have to do with regulation of aviation and licensing of aeronautics and aircraft. Nearly everyone agrees that Federal control of licensing and Federal regulations are desirable ends, in the interest of uniformity . . . It seems better, therefore, to abandon the field of rules and regulations and licensing of craft and pilots to the Federal government and confine the State act to the elementary principles concerning the lawfulness of flight, responsibility for damages and similar matters." 1922 Handbook of the Nat'l Conference of Comm'rs on Uniform State Laws and Proceedings 321.

In *Sheboygan Airways, Inc. v. Industrial Comm.,* 209 Wis. 352, 360, 245 N.W. 178 (1932), the court, in interpreting sec. 114.21, Stats., held that the state workmen's compensation act applied to intrastate aircraft navigation because there were no federal rules as to compensation of injured employees and there was no need for a general system or uniformity of regulations relating to the rights and obligations of employees and employers in cases of injury.

Sec. 114.21, Stats. 1929, was repealed in 1937 (ch. 381, Laws of 1937), when the legislature authorized the state aeronautic board to adopt and enforce rules and regulations to protect the safety of persons operating or using aircraft. The legislature specifically required that such rules and regulations be in conformity with federal regulations. Sec. 114.20, Stats. 1939, provided, *inter alia:*

"114.20 **Powers, rules, regulations and orders. (1)** Except as otherwise specifically provided in this chapter the state aeronautic board shall have supervision of establishing minimum standards of safety over aeronautics within the state, including the maintenance, operation and use of airports, landing fields, landing strips, air markings, air beacons and other air navigation facilities, and the establishment, operation, management and equipment of all air schools, flying clubs and other persons giving air instruction.

"(2) The state aeronautics board shall adopt and promulgate rules and regulations establishing minimum standards for safety with which all air navigation facilities, air schools and flying clubs shall comply, and shall adopt and enforce rules, regulations and orders to safeguard from accident and to protect the safety of persons operating or using aircraft and persons and property on the ground and to develop and promote aeronautics within this state. In order to avoid the danger of accident incident to confusion arising from conflicting rules, regulations and orders governing aeronautics, the rules, regulations and orders of the state aeronautic board shall be kept in conformity as nearly as may be, with the federal legislation, rules, regulations and orders on aeronautics, and shall not be inconsistent with paramount federal legislation, rules, regulations and orders on the subject."

In 1945 (ch. 513, Laws of 1945) the state aeronautics commission was created and given the power to formulate "reasonable regulations in the interest of safety." The legislature specially stated that the commission was to coordinate state aviation activities with those of the federal government. Secs. 114.30, 114.31, Stats. 1945.

Pilots flying in Wisconsin need a federal license, not a state license. Sec. 114.16, Stats., ch. 348, Laws of 1929. And in determining whether to penalize pilots for operating an aircraft in a careless or reckless manner, the state courts are required to consider the "standards for safe operation of aircraft prescribed by the federal statutes or regulations governing aeronautics." Sec. 114.09, Stats., ch. 213, Laws of 1947.

Our review of the history and development of chapter 114 reveals that the state legislature was interested in conforming state aeronautic law to federal law, in granting power over aviation to a state aeronautics commission, in avoiding conflict between state law and federal law, and in adhering to federal air traffic rules. We could find nothing in the history of chapter 114 or chapter 346 to lead the court to believe that the rules of the road applicable to vehicles under sec. 346.18(1), Stats., were intended to be applicable to aircraft in flight.

The plaintiff cites several cases to support its contentions that torts involving airplanes are to be judged on the basis of the law of the state where the tort occurred and that rules of negligence which are applicable to automobiles have been applied in aviation cases.[15] None of the cases cited by plaintiff holds that the state vehicle or highway statutes govern the operation of aircraft in flight. The conclusion we reach in the instant case that the state's vehicle code is not applicable to airplane collisions is not inconsistent with the cases upon which plaintiff relies.

Since the legislature did not intend sec. 346.18(1), Stats., to apply to aircraft in flight, we conclude that the forfeiture-of-right-of-way instruction based solely on this statute was erroneous[16] and that the case must be remanded for a new trial on the question of liability.

*By the Court.*—Decision of the court of appeals is affirmed; judgment of the circuit court reversed and cause remanded for a new trial on the issue of liability.

[15] *E.g., Rogers v. Ray Gardner Flying Service, Inc.,* 435 F.2d 1389 (5th Cir. 1970), cert. denied 401 U.S. 1010; *Finfera v. Thomas,* 119 F.2d 28 (6th Cir. 1941); *Allen v. United States,* 370 F. Supp. 992 (E.D. Mo. 1973); *Rosdail v. Western Aviation, Inc.,* 297 F. Supp. 681 (Colo. 1969); *Porter v. Southeastern Aviation, Inc.,* 191 F. Supp. 42 (N.D. Tenn. 1961); *McEntire v. Estate of Forte,* 463 S.W.2d 491 (Tex. 1971); *Southeastern Aviation, Inc. v. Hurd,* 209 Tenn. 639, 355 S.W.2d 436 (1962).

[16] Because we conclude that sec. 346.18(1), Stats., is not applicable, we need not reach the question of federal preemption.